## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERVET INC., d/b/a MERCK ANIMAL HEALTH and THE ARIZONA BOARD OF REGENTS, on behalf of The University of Arizona, | ) ) ) ) ) |
| Plaintiffs/Counterclaim Defendants, | ) ) C.A. No. 11-595-LPS ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| BOEHRINGER INGELHEIM VETMEDICA, INC., | ) **PUBLIC VERSION** ) ) |
| Defendant/Counterclaim Plaintiff. | ) |

### LETTER TO THE HONORABLE LEONARD P. STARK
### FROM DAVID E. MOORE DATED JANUARY 18, 2013

Enclosures

cc: Clerk of Court (via hand delivery)
Counsel of Record (via electronic mail)

Dated: January 18, 2013
Public Version Dated: January 29, 2013
1090725 / 37150

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant/Counterclaim Plaintiff Boehringer Ingelheim Vetmedica, Inc.*

Dear Judge Stark:

I write on behalf of Vetmedica in response to Plaintiffs' January 17, 2013 letter. (D.I. 181).

**Vetmedica's So-Called "New" Defenses.** On January 10, 2013 Vetmedica properly supplemented its invalidity contentions in response to Plaintiffs' Interrogatory No. 2 based on documents it acquired and produced, as soon as it reasonably could, from third parties Dr. Harold Stills, Dr. Connie Gebhart, and Dr. Gordon Lawson. Vetmedica identified Dr. Gebhart in its initial disclosures in September 2012 or earlier as potentially having the types of information supporting its prior art invalidity defenses that Vetmedica cited in its responses. Plaintiffs subpoenaed documents and a deposition of Dr. Gebhart and chose to not seek documents or depositions of Dr. Stills or Dr. Lawson. Despite Vetmedica's demonstrated diligence and timely disclosures, Plaintiffs now claim Vetmedica intentionally "hid its defenses" and request this Court to preclude Vetmedica from (i) asserting the invalidity defenses it supplemented, (ii) relying on any documents it produced in January from Drs. Gebhart, Lawson, and Stills, or (iii) calling these individuals to testify at trial relating to anything in Vetmedica's supplemental responses. Plaintiffs, however, provide no factual or legal basis for the extreme relief they seek, which runs contrary to well-established precedent both within this District and the Third Circuit that disfavors the exclusion of evidence. Exclusion of "critical evidence," such as evidence bearing on the invalidity of the patent-in-suit, is an "extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *Abbott Labs. v. Lupin Ltd.*, No. 09-152-LPS, 2011 WL 1897322, at *3 (D. Del. May 19, 2011) (denying motion to exclude); *WebExchange v. FedEx Corp.*, No. 08-133-JJF, 2010 WL 299240, at *2-3 (D. Del. Jan. 20, 2010) (same). Indeed, courts particularly disfavor excluding invalidity defenses, recognizing that "there is a public interest favoring the judicial testing of patent validity." *Abbot Labs.*, 2011 WL 1897322, at *5 (citing *U.S. v. Glaxo Group Ltd.*, 410 U.S. 52, 69 (1973)). There is no reason to exclude Vetmedica's invalidity defenses, documents, or witness testimony. Vetmedica's defenses should be tried on their merits.

As an initial matter, Plaintiffs' accusations that Vetmedica acted in bad faith and attempted to keep its defenses "secret" are baseless. To the contrary, Vetmedica timely and diligently put Plaintiffs on notice of Dr. Lawson's, Dr. Stills', and Dr. Gebhart's work in its initial disclosures, provided its highly detailed interrogatory responses before the close of fact discovery (with weeks before opening expert reports were due and months before the start of trial), and produced the documents it collected as soon as reasonably possible. In the case of Dr. Stills, Vetmedica produced his documents on the very same day Vetmedica received them.[1] Vetmedica produced the vast majority of Dr. Gebhart's documents on October 12, 2012, months before her deposition. (Ex. A, 1/17/2013 Hollis Corr.). In early January, Vetmedica produced less than 20 additional documents that Dr. Gebhart had only recently found or that Dr. Gebhart could not previously produce due to third-party confidentiality issues.[2] (*Id.*). Vetmedica produced some of

---

[1] Plaintiffs have identified no requirement for Vetmedica to have even done so. As example, Plaintiffs responded to Vetmedica's Interrogatory No. 1 with threadbare allegations of infringement in November 2011 and have yet to meaningfully identify any theories, documents, or witnesses on which they intend to rely. (Ex. B, Pls.' 11/30/2011 Resp. to Interrog. No. 1).
[2] Plaintiffs complain that Vetmedica conducted a "three-hour 'cross' examination" of Dr. Gebhart. Vetmedica, however, was entitled to examine Dr. Gebhart within the scope of Plaintiffs' question. And despite Vetmedica's requests, Plaintiffs' have not cited any testimony by Dr. Gebhart that was purportedly beyond the scope of their direct examination. (Ex. A.)

The Honorable Leonard P. Stark
January 18, 2013; Public Version Dated: January 29, 2013
Page 2

Dr. Lawson's documents on January 7, 2013, as soon as it could reasonably review and analyze them especially given the strains Plaintiffs put on its resources by **producing 95% of Plaintiffs' documents five months after the deadline** and forcing Vetmedica to prepare for, defend, and take the vast majority of the depositions in this case in just a matter of weeks. (*Id.*) These are not acts of bad faith, but acts of good faith in pursuing and supplementing discovery.

Further, Plaintiffs identify no prejudice warranting the extreme exclusion they seek. Plaintiffs have been on notice that Drs. Stills, Gebhart, and Lawson were sources of information relevant to the validity of the patent-in-suit in early as September 2012, when Vetmedica identified these individuals in its initial disclosures as having knowledge of "the isolation, characterization, and culturing [of] Lawsonia intracellularis" as well as "the invalidity of the '059 patent and prior art to the '059 patent." (Ex. C, Vetmedica's 9/27/2012 2nd Suppl. Rule 26(a)(1) Discl.). Vetmedica's supplemental responses simply confirm, citing documents and detail, that these individuals did in fact isolate, characterize and culture *Lawsonia intracellularis* and that this work constitutes invalidating prior art. It is particularly amazing that Plaintiffs claim they are surprised by Dr. Stills' prior art isolation work. Since as early as December 2011, the parties have been discussing Stills 1991, a prior art publication describing that very work, (Ex. D, Vetmedica's 12/14/2011 Resp. to Interrog. No. 2), and Plaintiffs themselves made arguments about the prior art effect of Stills' isolation work in their interrogatory responses as early as February 2012. (Ex. E, Pls.' 2/3/2012 Resp. to Interrog. No. 6). Nor can Plaintiffs reasonably claim they were surprised that Drs. Gebhart and Lawson would have relevant information regarding prior art. As Vetmedica explained in its April 14, 2012 opening claim construction brief, *Lawsonia intracellularis* is a species of bacteria named after Dr. Lawson for early his work identifying and culturing that species, a fact Plaintiffs likely knew long before they filed this case. (D.I. 51 at 28) Indeed, the file history of the patent-in-suit itself contains publications authored by Drs. Lawson and Gebhart describing Dr. Lawson's work in isolating *Lawsonia intracellularis*. (*See, e.g.,* Ex. F, Excerpt of '059 File History). Plaintiffs identify no prejudice they will suffer by Vetmedica's interrogatory responses. If Plaintiffs seriously intended to seek discovery from Drs. Lawson or Stills, they could have done so months ago. Plaintiffs likewise identify no reason why their alleged "prejudice" cannot be cured by briefly extending existing discovery deadlines. Plaintiffs' unidentified, curable "prejudice" does not outweigh the severe prejudice Vetmedica would suffer were the Court to grant them the draconian relief they seek.

**Vetmedica's Disclosure of Lawrence Goffney.** Plaintiffs' request to exclude Lawrence Goffney as an expert witness is premature and improper. Vetmedica disclosed Mr. Goffney on January 14, 2013 as a "consultant" to whom confidential material may be disclosed under the protective order. (Ex. G, 1/14/2013 Desh Corr.) Plaintiffs did not object to such disclosure but responded that it would be "highly unusual" to have a legal expert testify in Delaware. (Ex. H, 1/15/2013 Hollis Corr.) Plaintiffs now ask this Court to exclude Mr. Goffney as an expert witness, before he has submitted any report or provided any testimony. Should Plaintiffs find any opinion by Mr. Goffney objectionable they will have ample opportunity later to seek relief from the Court. Plaintiffs also fail to provide any basis for excluding Mr. Goffney's opinions outright even if he would testify as legal expert. *See, e.g.,* Ex. I, *Galderma Labs., L.P. v. Tolmar, Inc.*, No. 10-00045-LPS, 2/17/2012 Hr'g Tr. at 158:8-23 (D. Del) (allowing testimony of legal experts). This case implicates unique areas of patent practice, regarding which Your Honor or the jury may benefit from Mr. Goffney's testimony. This includes, for example, the PTO's practices, procedures, and requirements surrounding biological deposits made under the

The Honorable Leonard P. Stark
January 18, 2013; Public Version Dated: January 29, 2013
Page 3

Budapest Treaty, as well as the duty of patent applicants' and attorneys to disclose prior art to the PTO. Indeed, Plaintiffs concede by their only communication with Vetmedica on this topic that it would be "unusual" but not impossible for an expert such as Mr. Goffney to testify. The *Brigham* case that Plaintiffs cite further explains that "[t]he law permits experts in patent cases to offer testimony regarding practices and procedures of the PTO." *Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, No. 08-464, 2010 WL 3907490, at *1-2 (D. Del. Sept. 21, 2010); *see also Revlon Consumer Prods. Corp. v. L'Oreal S.A.*, No. 96-192 MMS, 1997 WL 158281, at *3 (D. Del. Mar. 26, 1997) (collecting cases allowing testimony regarding PTO practice and procedure). The Court should deny Plaintiffs' request to exclude Mr. Goffney.

**Topic 15 (Schedule A) of Plaintiffs' First Rule 30(b)(6) Notice.** Plaintiffs improperly seek a witness on Topic 15 regarding Vetmedica's "[a]nalyses of Stills 1[991], including the bases for the statements made by Vetmedica during the opposition against EP Patent EP-B1 843 818." For example, Plaintiffs expressly seek the "basis" of statements made by attorneys to EPO in adversarial proceedings, which are protected by the attorney-client privilege and the work-product doctrine. *See, e.g., Hercules, Inc. v. Exxon Corp.*, 434 F.3d 136, 151 (D. Del. 1977). Indeed, Plaintiffs' request runs directly contrary to their position that any testimony by Mr. Nicholas Seay (the attorney who prosecuted the patent-in-suit), regarding whether he saw Stills 1991 or any of his interpretations of it or the file history, would disclose attorney-client privileged communications. (*See* D.I. 108 at 1-3; ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉). Thus, the Court should deny Plaintiffs' request that Vetmedica produce a witness to testify regarding Topic 15.

**Plaintiffs' Second Rule 30(b)(6) First Notice.** Plaintiffs untimely and improperly seek a witness from Vetmedica to testify regarding the topics in their Second Rule 30(b)(6) Notice, which they served on January 4, 2013, less than a week before the close fact discovery and less than 5 days before the noticed deposition date which was a day that Plaintiffs previously represented to Vetmedica and counsel for a third party that they could not do a deposition. (*See* Ex. K (collecting correspondence). Although Plaintiffs characterize the topics in this second notice as "narrow," they do not dispute that the topics are duplicative of, and encompassed by, Topic 12 (Schedule A) and Topic 25 (Schedule B) from Plaintiffs' First Rule 30(b)(6) Notice, for which Vetmedica already provided a witness, Tim Bettington. Prior to Mr. Bettington's deposition, Vetmedica produced a number of financial documents and spreadsheets on which Plaintiffs had ample opportunity to question Mr. Bettington. But Plaintiffs only introduced and questioned Mr. Bettington on one of these documents. Although Plaintiffs claim that Mr. Bettington "was not prepared to testify fully," the record is clear that he would have been able to answer any questions if presented with specific documents, which Plaintiffs failed to do. (*See* Ex. L, 12/6/2012 T. Bettington Dep. Tr. at 150:22-25, 160:18-161:2, 192:19-193:25). Plaintiffs' second notice is an obvious attempt to redo a deposition with which they are not happy.

**Damages Documents.** Plaintiffs acknowledge that Vetmedica has produced profit and loss data relating to years 2003-2007 and other years, but fail to identify any specific deficiencies in Vetmedica's production. Nevertheless, Vetmedica responded to Plaintiffs' complaints this morning and identified documents providing profit and loss data. (Ex. M, 1/18/2013 Santhanam Corr.) To the extent Plaintiffs identify any specific issues, those issues are not ripe.

The Honorable Leonard P. Stark
January 18, 2013; Public Version Dated: January 29, 2013
Page 4

                                        Respectfully,

                                        */s/ David E. Moore*

                                        David E. Moore

DEM/nmt/1092033/37150

Enclosures
cc:    Clerk of Court (via hand delivery)
          Counsel of Record (via electronic mail)