# EXHIBIT A

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT B

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT C

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT D

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERVET INC. d/b/a MERCK ANIMAL HEALTH and THE ARIZONA BOARD OF REGENTS, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 11-595 (LPS) |
| | ) | |
| v. | ) | |
| | ) | |
| BOEHRINGER INGELHEIM VETMEDICA, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S SECOND SET OF INTERROGATORIES (NOS. 6-9)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs the Arizona Board of Regents on behalf of the University of Arizona ("the University") and Intervet Inc., d/b/a Merck Animal Health ("Intervet") (collectively, "Plaintiffs") hereby respond to the following interrogatories of Defendant Boehringer Ingelheim Vetmedica ("Vetmedica").

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

Plaintiffs make the following general objections and responses to Vetmedica's First Set of Interrogatories. To the extent applicable, the specific objection or response to each interrogatory incorporates each general objection and response.

1.      Plaintiffs have not completed their investigation, discovery, or analysis relating to this action and have not completed their preparation for trial. Thus, the information disclosed is based on Plaintiffs' reasonable, good-faith investigation at this time.

2.      Plaintiffs object to each interrogatory to the extent it requests information protected from disclosure by the attorney-client privilege, the work product doctrine or any other applicable privilege, immunity or doctrine.

3.      Plaintiffs object to Vetmedica's interrogatories, definitions and instructions to the extent they seek discovery beyond that permitted by the Federal Rules of Civil Procedure.  Plaintiffs further object to Vetmedica's definitions and instructions as unduly burdensome in their entirety and, individually, to the extent they do not make sense or seek to require Plaintiffs to interpret words, or read an interrogatory, differently than the plain English of the request itself.  For example, no. 7 ("The singular includes the plural and vice versa") and no. 2 (defining Intervet to mean both Intervet and the unrelated entity of The Arizona Board of Regents) do not make sense and their application would lead to confusion.  As another example, no. 22 (seeking to read into every interrogatory identification of all people consulted by Plaintiffs "in connection with the preparation of [Plaintiffs'] answer to that interrogatory") and similar "identify" instructions, seek to read into the interrogatories burdensome requests that are not in the requests as stated, and at least in the case of no. 22, would seek attorney work product. Plaintiffs will not follow such instructions and definitions.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 6:

To the extent you contend that any asserted claim of the Patent-in-Suit is not invalid for failure to meet one or more of the conditions of 35 U.S.C. § 102 or 103, state in detail your contentions and all of the factual and legal bases for your contentions, including by identifying, for each of the references identified in Vetmedica's response(s) to Plaintiff's Interrogatory No. 2 or the Exhibit(s) incorporated therein, each claim element that you contend is not disclosed by such reference, whether you dispute Vetmedica's statements corresponding to such element in the claim chart(s) incorporated into its response to Plaintiffs' Interrogatory No. 2 and the bases for such dispute, and identify all facts and documents that support your contentions and the persons with knowledge about such facts.

### RESPONSE TO INTERROGATORY NO. 6:

Subject to its General Objections, Plaintiffs state as follows:

Plaintiffs note that this interrogatory is unreasonable and procedurally improper to the extent it might be seeking Plaintiffs to respond to each statement Vetmedica made in its

Response to Interrogatory No. 2 (e.g. with respect to its defenses under 35 U.S.C. § 102 or 103) and therefore Plaintiffs object to that extent.

With respect to Vetmedica's invalidity contentions apparently based on 35 U.S.C. §§ 102-103, Plaintiffs note that they have accused Vetmedica of infringing every claim of the '059 patent. However, as Vetmedica has set forth invalidity contentions limited to claim 1 of the '059 patent, only those invalidity contentions will be addressed herein.

Plaintiffs offer the following responses with respect to those invalidity assertions made by Vetmedica in Vetmedica's response to Plaintiffs' Interrogatories to the extent that those invalidity assertions appear to be based on 35 U.S.C. §§ 102-103. Plaintiffs further reaffirm that they have accused Vetmedica of infringing each and every claim of the '059 patent. However, as Vetmedica has offered invalidity contentions limited to claim 1 of the '059 patent, only those invalidity contentions will be addressed herein and Plaintiffs object to providing information not relevant to the invalidity contentions as made by Vetmedica.

Vetmedica asserts that the '059 patent is invalid as "anticipated by and/or obvious over Harold F. Stills, *Isolation of an Intracellular Bacterium from Hamsters (Mesocricetus auratus) with Proliferative Ileitis and Reproduction of the Disease with a Pure Culture*, 5 INFECTION & IMMUNITY 3227-36 (Sept. 1991)." In the claim chart attached to Vetmedica's response, Vetmedica indicates that it also relies on the combination of the aforementioned Stills paper ("Stills 1") and a paper entitled "Steven McOrist & Gordon H. K. Lawson, *Possible Relationship of Proliferative Enteritis in Pigs and Hamsters*, 15 Vet. Microbiol. 293, Abstract, 299 (1987)" ("McOrist 1").

With respect to its anticipation contention, Vetmedica fails to show that Stills 1 meets each of the limitations of claim 1. The claim requires "[a] biologically pure culture of a

mammalian host cell infected by" a particular bacterium.   That bacterium is "an obligate intracellular bacterium that causes porcine proliferative enteritis after inoculation into pigs having all of the identifying characteristics of ATCC Accession No. 55370." That bacterium is a bacterium of the species *Lawsonia intracellularis*.   Vetmedica has not shown that Stills 1 discloses biologically pure cultures of mammalian cells infected with *Lawsonia intracellularis*, as required by claim 1.

Moreover, Dr. Stills commented on his Stills 1 paper in an abstract also published in 1991, H. Stills, J.G. Fox, B.J. Paster & F.E. Dewhirst, *New* Chlamydia sp. *Strain SFPD Isolated from Transmissible Proliferative Ileitis in Hamsters*, 4 Microbiol. Ecol. Health Dis., S99 (1991) ("Stills 2").  Stills 2 provides results from "[t]he complete 16S rRNA sequenc[ing]" on the "intracellular organism [] isolated from ileal epithelial cells" in the Stills 1 study.  Based on that testing, Dr. Stills concluded that he had found bacteria "related to the *Chlamydia*."  (*Id.*)

Additional evidence confirms that Stills 1 did not disclose the claimed isolated bacteria of the '059 patent.  The 1993 paper by Gordon Lawson, "Intracellular Bacteria of Porcine Proliferative Enteropathy," Journal of Clinical Microbiology, May 1993, p 1136-1142, concludes that Stills 1  disclosed cultures containing "a variety of bacteria including chlamydiae."  Vetmedica itself has acknowledged in proceedings before the European Patent Office that Stills 1 did not isolate *Lawsonia intracellularis*.  (Submission to the European Patent Office (October 23, 2006) in response to Communication of a Notice of Opposition dated December 14 2005 in the Opposiiton against EP Patent EP-B1 843 818, at 3 ("A published study ([Stills 1]) isolating possible cause of ileitis from hamsters in Ohio was contaminated in their cell cultures grown in a monolayer by a non-pathogenic Chlamydia species isolate.").)  Accordingly, Vetmedica has stated that *Lawsonia intracellularis* was not isolated until 1993.  (*Id.*)

With respect to obviousness, Vetmedica's obviousness defense fails at least because it has not shown that the combination of Stills 1 and McOrist 1 disclose every limitation of claim 1. Vetmedica relies on Stills 1 for the alleged disclosure of the bacteria that causes ileitis in hamsters, and cites McOrist 1 in combination with Stills. As discussed, Stills 1 does not disclose the claimed bacteria of the '059 patent. Moreover, McOrist 1 states only that "a common initiating or aetiological agent may be present." (VM-INT0000100.) Vetmedica provided no adequate basis for their proposed combination.

**INTERROGATORY NO. 7:**

To the extent you contend that any asserted claim of the Patent-in-Suit is not invalid for failure to meet one or more of the conditions of 35 U.S.C. § 112, state in detail your contentions and all of the factual and legal bases for your contentions, including by identifying any statement in the third, fourth, and fifth paragraphs of Vetmedica's response(s) to Plaintiffs' Interrogatory No. 2 that you dispute and the bases for such dispute, and identify all facts and documents that support your contentions and the persons with knowledge about such facts.

**RESPONSE TO INTERROGATORY NO. 7:**

Subject to its General Objections, Plaintiffs state as follows:

Plaintiffs note that this interrogatory is unreasonable and procedurally improper to the extent it might be seeking Plaintiffs to respond to each statement Vetmedica made in its Response to Interrogatory No. 2 (e.g. with respect to its defenses under 35 U.S.C. § 112) and therefore Plaintiffs object to that extent.

With respect to Vetmedica's invalidity contentions apparently based on 35 U.S.C. § 112, Plaintiffs note that they have accused Vetmedica of infringing every claim of the '059 patent. However, as Vetmedica has set forth invalidity contentions limited to claim 1 of the '059 patent, only those invalidity contentions will be addressed herein and Plaintiffs object to providing information not relevant to the invalidity contentions as made by Vetmedica.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

Mary B. Graham (#2256)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
  *Attorneys for Intervet Inc. d/b/a Merck Animal*
  *Health and The Arizona Board of Regents*

OF COUNSEL:

Raymond N. Nimrod
Gregory D. Bonifield
Aaron S. Kaufman
QUINN EMANUEL
URQUHART & SULLIVAN LLP
51 Madison Ave, 22nd Floor
New York, NY 10010
(212) 849-7000

February 3, 2012
5219265

# EXHIBIT F

#10/C
6/28/94 JP

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants:  Lynn A. Joens             Date:  May 31, 1994
             Robert D. Glock

Serial No.: 07/973,018                  Group Art Unit:  1808

Filed:  November 9, 1992                File No.:  92-214-9006-9

For:  ETIOLOGICAL AGENT FOR            Examiner:  K. Larson
      PORCINE ENTERITIS

        I hereby certify that this correspondence is
        being deposited with the United States Postal
        Service as first class mail in an envelope
        addressed to:  Commissioner of Patents and
        Trademarks, Washington, D.C.  20231, on the
        date of signature below.

                    Nicholas J. Seay
        ─────────────────────────────────────
        (Name of applicant, assignee, or
            Registered Representative)

        ─────────────────────────────────────
                    (Signature)

                    May 31, 1994
        ─────────────────────────────────────
              (Date of Signature)

                    RESPONSE

Commissioner of Patents
    and Trademarks
Washington DC  20231

Dear Sir:

     In response to an Office Action mailed January 4, 1994, in

connection with the above-identified patent application, please

amend the application as follows:

IVET-00000168

<u>In the Specification</u>:

Page 1, line 23, delete "campylobacter-like" and insert therefor --*Campylobacter*-like--.

Page 3, lines 20 and 21, delete "<u>Campylobacter spp</u>" and insert therefor --*Campylobacter spp*--.

Page 4, line 4, delete "orally" and insert therefor "--oral--.

Page 13, line 17, before "in" insert --located at 12301 Parklawn Drive--.

<u>In the Claims</u>:

<u>Please amend Claims 1-10 as follows</u>:

1.   (Twice Amended)  A biologically pure culture of a mammalian host cell [containing a] <u>infected by an</u> <u>obligate</u> intracellular bacterium that causes [symptoms of] porcine proliferative enteritis after inoculation [of the culture] into pigs.

2.   (Amended)  A biologically pure culture as claimed in claim 1 wherein the <u>mammalian</u> host cell is the human intestinal cell line [called] Henle 407.

3.   (Twice Amended)  A biologically pure culture as claimed in claim 1 wherein the <u>obligate</u> intracellular bacterium [causing symptoms of] <u>that causes</u> porcine proliferative enteritis is a

-2-

IVET-00000169

bacterium having dimensions in the range of 0.24-0.27 × 1.4-2.4

4.   (Amended)   A biologically pure culture as claimed in claim 1 wherein the obligate intracellular [PPE-causing agent] bacterium that causes porcine proliferative enteritis is isolated from enterocytes of a pig having the symptoms of PPE.

5.   (Twice Amended)   A biologically pure culture of a mammalian host cell and a bacterium that causes [symptoms of] porcine proliferative enteritis in inoculated pigs, the bacterium having the disease-causing characteristics of the obligate intracellular bacterium hosted in ATCC Accession No. 55370.

6.   (Amended)   A purified preparation of an obligate intracellular [PPE-causing agent] bacterium that causes porcine proliferative enteritis, the bacterium being capable of infecting a mammalian host cell in vitro.

7.   (Amended)   A purified preparation as claimed in claim 6 wherein the mammalian host cell is the human intestinal cell line [called] Henle 407.

8.   (Amended)   A purified preparation as claimed in claim 6 wherein the obligate intracellular [PPE-causing agent] bacterium

-3-

IVET-00000170

that causes porcine proliferative enteritis is an organism having dimensions in the range of 0.24-0.27 μ x 1.4-2.4 μ.

9.    (Amended)  A purified preparation as claimed in claim 6 wherein the obligate intracellular [PPE-causing agent] bacterium that causes porcine proliferative enteritis is isolated from enterocytes of a pig having the symptoms of [PPE] porcine proliferative enteritis.

10.    (Amended)  A purified preparation as claimed in claim 6 wherein the [PPE-causing agent] bacterium that causes porcine proliferative enteritis is [derived] obtained from ATCC Accession No. [_____] 55370.

---

## REMARKS

In an Office Action mailed January 4, 1994 the Examiner in charge of the above-identified patent application made final a requirement for restriction of the claims, objected to the specification and rejected the claims under 35 U.S.C. §112, first paragraph, maintained a rejection of the claims under 35 U.S.C. §112, second paragraph, and maintained a rejection of the claims under 35 U.S.C. §103.  In addition, the Examiner noted certain wording informalities and noted the use of certain alleged trademarks.  Each of these issues is considered separately below. In light of the preceding amendments and the arguments presented

-4-

IVET-00000171

herein, reconsideration of the merits of this patent application is respectfully requested.

## Trademarks

The Examiner noted the use of the terms ELISA, Coomassie Blue, and Western Blot in the specification.  None of these terms are trademarks.  ELISA is a common and well known acronym standing for Enzyme Linked ImmunoSorbent Assay.  Coomassie Blue is a dye commonly used to stain proteins.  Western Blot is a common technique of the molecular biologist for identifying size-separated proteins on the basis of their recognition by a particular antibody.  No correction is believed necessary.

## Wording Informalities

In paragraph 2 of the Office Action, the Examiner objected to certain wording informalities in the specification and in the claims.  These informalities have been corrected.

## Rejections Under 35 U.S.C. §112, first paragraph

The Examiner rejected Claims 1-10 for an alleged lack of enabling disclosure with respect to the specific genus, species, and strain of bacterium that the inventors have demonstrated causes porcine proliferative enteritis (PPE).

There is no requirement under §112 that the applicants assign a taxonomic designation to the bacterium that they have identified.  The applicants have, on the other hand, met their obligation to describe the bacterium to the extent possible such that others can practice the invention.  The applicants have

-5-

IVET-00000172

identified a source for the bacterium and a method for obtaining such a bacterium from the source.  Contrary to the assertion of the Examiner, the applicants have also described morphological and physiological features that distinguish the bacterium. Specifically, in Example 3, the applicants have described the dimensions of the bacterium and the morphology of enterocytes isolated from pigs inoculated with cells containing the bacterium.  The pathology of PPE is well characterized and is described in the background section of the application.  Thus, upon inoculation, one of ordinary skill would be able to determine whether PPE was caused by the organism.

The applicants are unsure what additional information would be required to demonstrate that the strain is newly isolated. Perhaps the strongest arguments in support of the newly isolated nature of the strain are that the prior art does not describe an obligate intracellular organism that can alone induce PPE and, more importantly, that the organism isolated by the present inventors was not readily classifiable into an existing taxonomic designation.

As an aside, a subsequent report, published after the filing date of this application, clearly identifies as the causitive agent of PPE a "novel group of organisms, currently known as ileal symbiont *Ileobacter intracellularis*."  McOrist, S., et al., "The Etiology of Porcine Proliferative Enteropathy (Ileitis)," abstracts of papers presented at the 74th Annual Meeting of the Conference of Research Workers in Animal Diseases, November 8-9,

-6-

IVET-00000173

1993, Abstract No. 62. A copy of the abstract is enclosed, although no form PTO 1449 is enclosed, since the abstract is not prior art to the present invention. It appears from this abstract that the only identifying characteristics that other leaders in the art have been able to assign to their isolated strain are that it is intracellular, curved, and sufficient to induce PPE after inoculation. To require more of the present inventors would be improper.

With regard to the ATCC deposit, the applicants wish to clarify for the Examiner that the deposit was in fact a mammalian host cell line (Henley 407) hosting the obligate intracellular bacterium. By the amendment to Claim 5, any ambiguity with regard to the identity of ATCC No. 55370 is believed to be eliminated.

It is further believed that the specification as amended in the previous response recites the date that the bacterium and cell line were deposited, the name of the cell line hosting the PPE causing agent, and the depository. At the request of the Examiner, the street address of ATCC has been added to the deposit information.

The Examiner again requested a statement by an attorney of record that the bacterium and cell line have been deposited under the Budapest Treaty and that the bacterium and cell line will be irrevocably and without restriction or condition released to the public upon the issuance of a patent. This statement appears in the specification at page 13, beginning at line 14 and again in

-7-

IVET-00000174

the previously filed response on page 3, third paragraph.  In any event, the undersigned, registered to practice before the United States Patent and Trademark Office, does hereby so state.

The Examiner further alleges that the specification only supports the inclusion of the isolated bacterium in Henley 407 cells.  The applicants respectfully disagree.  The applicants have provided in the specification a detailed method for isolating an obligate intracellular bacterium from infected enterocytes in the intestinal tissue of pigs having PPE lesions. The applicants further describe the isolation, storage, and propagation of the agent.  The Examiner's attention is directed to the paragraphs bridging pages 4 and 5.  Moreover, Claim 1 as amended clearly recites that the culture must cause porcine proliferative enteritis after inoculation in pigs, thereby providing a method for determining whether the bacterium has been obtained.  Thus, a culture of a mammalian host cell that could not support the causative bacterium would lie outside the claims. Although the references of record demonstrate that others had been unable to locate the causative agent, the applicants have demonstrated, particularly in Example 3, that they have now enabled one to do so.  Accordingly, the applicants contend that one of ordinary skill following the procedures set forth in the application can obtain the PPE-causing bacterium which can subsequently be hosted on appropriate permissive mammalian host cells.  No further limitation to Claim 1 is believed necessary or proper.  This is particularly important in light of the apparent

-8-

subsequent success of others in culturing a different obligate intracellular PPE-causing bacterial isolate in a different mammalian cell line, as has been described above.

It is therefore believed that all rejections under §112, first paragraph have been overcome, and these rejections should be withdrawn.

Rejection Under §112, second paragraph

By the amendments to the claims, the applicants have eliminated the phrase "PPE-causing agent from the claims. Further, as mentioned above, the applicants have clarified the language of Claim 5 to point out that ATCC Accession Number 55370 is not a bacterium but is rather a mammalian cell hosting an obligate intracellular bacterium.

Additional changes to Claims 6-8 and 10, suggested by the Examiner, have been made.

It is therefore believed that all rejections under §112, second paragraph have been overcome, and these rejections should be withdrawn.

Rejections under 35 U.S.C. §103

The Examiner maintained a rejection under §103 of Claims 1-10 over Lomax et al. In light of the amendments to the claims and the arguments below, the applicants respectfully request reconsideration of this obviousness rejection and its withdrawal.

It is clear that Lomax et al. isolated a bacterium that could not alone cause PPE. The basis for this assertion has been argued before, and is not repeated herein. It is also clear that

-9-

IVET-00000176

the applicants have isolated and cultured a bacterium that alone causes PPE. The applicants assert that whatever the similarity between the two bacteria in their ability to induce certain symptoms, the invention as claimed would not have been obvious to those skilled in the art.

The claims now recite that the bacterium causes the porcine proliferative enteritis disease, rather than the symptoms thereof. Although McOrist et al. (R) indicated in 1989 that *Campylobacter*-like organisms may be the agents responsible, members of the same research team also asserted in 1991 that the "identity and origin of the intracellular [*Campylobacter*-like organisms] and their relationship to the pathogenesis of the disease have not been resolved." Gebhart et al. (S), page 1011, Col. 1. Gebhart et al. continued, "so far, however, attempts to reproduce PE with any of these cultured *Campylobacter* species or combination of the cultures have not been successful." Thus it is clear that even for a period of at least nine years after the publication of Lomax, the art was unable to culture any organism necessary and sufficient to cause PPE. Moreover, those skilled in the art had long considered the possibility that one or more additional organisms or factors were needed along with a *Campylobacter*-like organism to bring about the disease.

Yet, surprisingly, the applicants have here made two unexpected observations that support the non-obviousness of the invention. The applicants have found that a single organism is, indeed, the causitive agent of PPE and, further, were unable to

-10-

IVET-00000177

classify their isolated bacterium into any known class, particularly into *Campylobacter*. No document cited by the examiner suggests such a clear and unambiguous result. At most, Lomax and the other documents discussed by the Examiner hint that a *Campylobacter*-like organism is involved. None goes so far as to identify, with any degree of scientific certainty, the etiological role of any particular organism. Where, then, is any suggestion to be gleaned from the art to isolate an unknown species of bacterium, especially when efforts in the art had clearly begun to focus on isolating combinations of organisms that together might cause PPE. It is scientific dogma that until one has isolated a single organism that can itself cause the complete pathology characteristic of a disease, one can never state with any certainty the existance of such an organism.

The most recent published information in this art, the above-mentioned Abstract No. 62 by McOrist, Gebhart, and Lawson lends credence to both the novelty and non-obviousness of the present invention. Abstract No. 62 reiterates that until recently the art was unaware of the etiology of PPE. These authors, all of whose papers have been cited during prosecution of this application, reported that a non-*Campylobacter* species is the causative agent of PPE. This published report of the PPE-causing agent appeared after the applicants' filing date. It is cited herein as further evidence of the fact that, counter to the earlier teachings in the art, a single PPE-causing bacterial organism, poorly defined, but fundamentally different from that

-11-

of Lomax, can be productively cultured from pigs.  By virtue of that critical difference, the present invention cannot have been obvious over Lomax.

The applicants have now responded to each rejection brought by the Examiner.  In light of the amendments and the accompanying argument, the Examiner is respectfully asked to reconsider the merits of this patent application and to withdraw the outstanding §112 and §103 rejections of Claims 1-10.

Respectfully submitted,

Nicholas J. Seay, Reg. No. 27386
Attorney for Applicants
QUARLES & BRADY
P.O. Box 2113
Madison, WI   53701-2113

(608) 251-5000

QBMAD1\37898

-12-

IVET-00000179

# GASTROENTERIC DISEASES

**62**

S. McOrist[1,a], C.J. Gebhart[2], G.H.K. Lawson[1]; Department of Veterinary Pathology, University of Edinburgh, EH9 1QH, Scotland[1]; Department of Veterinary Pathobiology, College of Veterinary Medicine, University of Minnesota, St. Paul, MN 55108[2].

Proliferative enteropathy (Ileitis) is a major cause of economic loss in swine production worldwide. Effective methods of treatment and control were hampered by lack of knowledge of its etiology. The consistent presence of curved, intracellular organisms in proliferating epithelial cells in the intestinal lesions led to efforts to cultivate them. Antigenic and DNA studies of these organisms clearly identified them as belonging to a novel group of organisms, currently known as ileal symbiont "Ileobacter intracellularis". These bacteria were not able to be cultivated on ordinary media, but were cultivated in established enterocyte cell cultures, IEC-18; i.e. they are obligate intracellular bacteria. Several strains of IS intracellularis were grown in cell lines, passaged at least six times and used as oral inocula for 1. gnotobiotic pigs. 2. gnotobiotic pigs that had been dosed with Bacteroides spp and E. coli, and 3. conventional (SPF) pigs. Pigs in groups 2 and 3 developed severe proliferative enteropathy, with classical proliferative lesions and intracellular bacteria, within 3 weeks. Group 1 remained normal. The etiology of proliferative enteropathy is clearly the obligate intracellular bacteria, IS intracellularis. As in swine dysentery, some gut flora is apparently required to optimise conditions for growth of the causative agent in vivo.

**63**

P.K. Holyoake[a], G.F. Jones[b] and P.R. Davies[a], [a]Dept. of Clinical and Population Sciences, [b]Dept. of Pathobiology, University of Minnesota, St Paul, MN 55108

Porcine PE, associated with ileal symbionts (IS) intracellularis occurs unpredictably in pig farms. Affected animals suffer from reduced growth rate and diarrhea, or severe dysentery and acute death. Epidemiological studies of PE have been limited by the lack of an ante-mortem test. Pooled pen floor fecal samples were collected from two farms with a recent history of PE, and subjected to PCR amplification using primers shown to be specific for IS intracellularis. This assay has been shown to be diagnostic for PE. On Farm 1, individual fecal samples were collected from 109 pigs aged between eight to 24 weeks. On both farms, therapeutic consequences of in-feed antimicrobials in the diet of nursery pigs were replaced at 10 weeks of age by tylosin at 40+100 g/tonne. No medication was used on Farm 2 after 16 weeks of age. IS intracellularis was detected in the feces of pigs over 19 weeks of age on Farm 1. This was consistent with the age range of clinical disease on this farm. On Farm 2, fecal shedding was detected in growing pigs between 12 and 24 weeks of age. The frequency of shedding by individual pigs within "infected" pens ranged from 17% to 33%. The results suggest that growing/finishing pigs were the main source of IS intracellularis contamination on these farms, and that the addition of tylosin to feed at 40+100 g/tonne did not prevent shedding. The detection of IS intracellularis in pooled fecal samples may be used to identify pens in which pigs are shedding the organism.

**64**

G.E. Duhamel[1], I.I. Gardner[a], M.A. Anderson[a], R.L. Walker[b], [a]Dept. Vet. Biomedical Sci., Univ. of Nebraska, Lincoln, NE 68583-0905, [b]School of Vet. Med., Dept. Epidemiol. Preventive Med., and [c]California Vet. Diag. Lab. Syst., Univ. of California, Davis, CA 95617.

Weakly ß-hemolytic intestinal spirochetes (WBHIS) have been associated with a diarrheal syndrome of human beings and animals, and the disease has been referred to as intestinal spirochetosis (IS). We describe the pathological changes occurring in IS of swine and compare these changes with those observed in IS of human beings. Three live, feeder-age pigs from a 120-sow breeding herd were submitted for diagnostic investigation because of depression of weight gain and diarrhea without blood. Pathological examination of colon revealed massive numbers of spirochetes intimately attached by one end either along the luminal cell membrane producing a dark fringe which covered the superficial epithelium or along the basement membrane in areas of colonic erosions. Ultrastructurally, effacement of enterocyte brush border was present at the site of spirochetal attachment and profiles of spirochetes were seen free in the lamina propria and within phagocytes in macrophages. WBHIS strain D9201243 was isolated from all 3 pigs and found to be closely related to WBHIS associated with human IS.

**65**

R.O. Elder, O.E. Duhamel[a], R.W. Schafer, M.R. Mathiesen, R.A. Kuehls, M. Ramanathan. Dept. Vet. Biomedical Sci., Univ. of Nebraska, Lincoln, NE 68583-0905.

Routine laboratory diagnosis of swine dysentery is based on the intensity and pattern of hemolysis produced by S. hyodysenteriae when cultured anaerobically on selective agar medium for 2 to 4 days. We describe the development of a rapid, sensitive and specific polymerase chain reaction (PCR) assay for the detection of S. hyodysenteriae in feces. An oligonucleotide primer pair was designed based on sequence analysis of a recombinant clone pRED3C6 containing a 2.3-kb DNA fragment unique to S. hyodysenteriae. When used as a hot start PCR, this generates DNA from each of the 9 serotypes of S. hyodysenteriae, but none of the cultivable reference isolates of the order Spirochaetales, or representatives of other enteric bacteria of swine yielded 1.35-kb products. Positive hybridization signal with an S. hyodysenteriae-specific internal oligonucleotide probe confirmed the specificity of the 1.35-kb products. The sensitivity of the PCR assay was calculated to be between 1 and 10 organisms/g of feces. Detection of S. hyodysenteriae by PCR has great potential in rapid identification of S. hyodysenteriae in diagnostic specimens.

**66**

G.E. Duhamel[1], R.B. Westerman[a], R.M. Phillips[a], and L.A. Joens[b]. Dept. of Veterinary Diagnostic Investigation[a], KSU, Manhattan, KS, 66506 and Dept. of Veterinary Science[b], Univ. of Arizona, Tucson, AZ 85721.

Detection and differentiation of S. hyodysenteriae from nonpathogenic S. innocens is limited to subjective analysis of hemolysis produced from growth of the spirochetes on selective media. Monoclonal antibodies were produced to the type-specific lipooligosaccharide antigens of the pathogenic species to serve as a tool for the diagnosis of swine dysentery. A total of 12 clones were produced which reacted specifically to the seven serotypes of S. hyodysenteriae in the indirect fluorescent antibody test and in the ELISA using either fixed whole-cell preparations of the spirochete or serotype-specific lipooligosaccharide as the antigen, respectively. Impression smears from 7 of 14 clinical intestines were shown by IFAT to contain S. hyodysenteriae using a pool of six of the type-specific monoclonal antibodies. Five of the intestines were infected with serotype 2, one was infected with serotype 1 and one intestine was shown to contain both serotypes.

**67**

G.E. Duhamel[1], M.R. Mathiesen[a], R.W. Schafer[a], M. Ramanathan[a], J.L. Johnson[b]. [a]Dept. Vet. Biomed. Sci., Univ. of Nebraska, Lincoln, NE 68583-0905 and [b]Dept. Anaerobic Microbiol., Virginia Polytech. Inst. State Univ., Blacksburg, VA 24061-0305.

Weakly ß-hemolytic intestinal spirochetes (WBHIS) are assigned to the species Serpulina innocens, however, numerous reports describe morphological, biochemical, and antigenic heterogeneity among WBHIS. Additionally, diarrhea associated with infection by WBHIS has been reported in swine and human beings and the disease has been referred to as intestinal spirochetosis (IS). WBHIS strains D92012431A and P436/78, isolated from pigs with IS in the United States and the United Kingdom respectively, were compared with WBHIS strain 16, obtained from a human being with AIDS-associated IS, and reference strains of S. hyodysenteriae, and S. innocens using DNA-DNA reassociation and genomic fingerprinting by restriction fragment length polymorphism and arbitrarily primed polymerase chain reaction. Based on results of genomic analyses, we propose a new species of spirochetes, S. coli sp. nov. which is distinct but related to S. hyodysenteriae and S. innocens, and associated with IS of swine and human beings.

IVET-00000181



PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants:  Lynn A. Joens          Date:  May 23, 1996
             Robert D. Glock    ,

Serial No.: 07/973,018          Group Art Unit:  1808

Filed:  November 9, 1992          File No.:  92-214-9006-9

For:  ETIOLOGICAL AGENT FOR          Examiner:  K. Larson
      PORCINE ENTERITIS

AMENDMENT

Assistant Commissioner for Patents
Washington DC  20231

Dear Sir:

     In response to an Office Action mailed November 27, 1995 and
in the matter of the above-identified patent application, please
amend the application as follows:


In the Claims:

     Please amend Claim 5 as follows:


     5.     (Thrice Amended)  A biologically pure culture of a
mammalian host cell and a bacterium that causes porcine
proliferative enteritis in inoculated pigs, the bacterium being
an obligate intracellular organism and having the disease-causing
characteristics of the obligate intracellular bacterium hosted in
ATCC Accession No. 55370.

IVET-00000215

REMARKS

The November 27, 1995 Office Action rejects the specification and claims 1-5 under 35 U.S.C. § 112, first paragraph, claims 1-5 under 35 U.S.C. § 112, first paragraph, and claim 5 under 35 U.S.C. § 103.  In light of the amendments above and the arguments below, applicants respectfully request reconsideration.

§ 112 Rejections

The Office Action rejects the specification and claims 1-5 under 35 U.S.C. § 112, first paragraph for reasons of record as set forth on page 2 of the Office Action of March 10, 1995.  On page 2 of the March 10, 1995 Office Action, applicants are directed to pages 3 and 4 of the January 4, 1994 Office Action. This Office Action notes that "specifically, an adequate written description is lacking for the bacterium with regard to the specific genus, species, and strain."  Applicants enclose as Exhibit A a recent article describing the identity of the organism claimed here as a new genus and species named Ileal Symbiont intracellularis (ISI).  Although the article is not dated, note that it cites 1993 articles and was clearly published after the filing date of the present application.  Applicants note that they could not have identified the organism by species and genus in this patent application, since at the time of filing this patent application that nomenclature had not yet been made. The applicants would be willing to add this species designation

2

IVET-00000216

to this patent application but do not do so only out of fear that this would be considered new matter.

Applicants continue to maintain that one of skill in the art could successfully reproduce applicants' organism by reference to the specification of the above-identified case.  As noted in the previous Office Action, applicants note that size provides an initial screen that may be followed up by a diagnosis of porcine proliferative enteritis.  Finally, culture techniques can determine whether the selected organism is an obligate intracellular bacterium.  All three of these characteristics are diagnostic of the claimed organism.

The Examiner notes that "the fact that the claimed organism must exist within a host is not a morphological or physiological feature."  However, it _is_ a feature that would help one of skill in the art identify whether they have isolated the organism of the present invention.

The Examiner notes that applicants' second characteristic "would also require undue experimentation since the skilled artisan would have to inoculate a pig just to determine whether the selected organism caused PPE."  One would always have to determine whether an isolated organism caused the disease in question, regardless of the specificity of the morphological and physiological characterization.  This is not "undue experimentation," but a check that one of skill in the art would necessarily perform on any suspected organism.

3

IVET-00000217

The Examiner's arguments in support of this rejection in this Office Action are also misplaced.  The Examiner admits that the applicants have identified the size, the disease that the organism causes in pigs, and the fact that the organism is an obligate intracellular.  The Examiner argues that size is insufficient and that being an obligate intracellular is not a morphological or physiological feature.

The applicants assert that size is clearly a morphological feature and that being an obligate intracellular is equally clearly a physiological feature.  It clearly distinguishes, for example, the prior art.  Also, the applicants submit, the test to determine if an organism of this size and of obligate intracellular nature is, contrary to the assertion of the Examiner, not difficult to test for the capability to cause porcine proliferative enteritis.  As set forth in Example 2 herein, the inoculation of the organism into young pigs creates clearly notable symptoms contrasting starkly with controls. Undue experimentation is not required to perform a test of this kind.

Applicants have adequately distinguished the Alderton, et al. reference by providing a check for whether the organism is an obligate intracellular organism.

On page 3 of the Office Action, claims 1-5 are rejected under 35 U.S.C. § 112, first paragraph, as "the disclosure is enabling only for claims limited to a biologically pure culture of Henle 407 cells hosting a causative agent of porcine

4

IVET-00000218

proliferative enteritis deposited under ATCC Accession No.
55370." Applicants again respectfully maintain that the Examiner
is imposing too strict a requirement on the identity of the host
cell. As the Examiner is aware, the host cell is merely a
carrier that maintains the genetic element is successive
generations. There is nothing special about the particular host
cell used by applicants to deposit the organism with ATCC. One
of skill in the art of molecular biology would realize that the
organism may be maintained in a variety of host cells.

To this point, applicants enclose as Exhibit B a 1993
publication by Jones, et al. Note that "DNA was extracted from
the fecal samples and assayed for the presence of sequences
specific for IS intracellularis by dot blot hybridization and
polymerase chain reaction amplification. IS intracellularis was
detected by polymerase chain reaction in the feces of 20 of 21
inoculated pigs. . . ." (abstract). This is the organism claimed
here. Thus, the claimed organism was detected in 20 fecal
samples of a variety of cell and tissue types. This indicates
that the organism can clearly be hosted in other cel types.

§ 103 Rejections

The Office Action has rejected claim 5 under 35 U.S.C. § 103
as being unpatentable over Alderton. The Examiner notes that
"claim 5 does not require that the organism be an obligate
intracellular organism." Applicants have now amended claim 5 to

5

contain this description.  This should now clearly distinguish over the cited prior art.

As the application is now in condition for allowance, applicants respectfully request reconsideration.  Applicants have enclosed a petition in fee for a three month extension of time so that this response may be timely filed.  If further fees are necessary, please charge Deposit Account 17-0055.

Respectfully submitted,

Nicholas J. Seay, Reg. No. 27386
Attorney for Applicants
QUARLES & BRADY
P.O. Box 2113
Madison, WI   53701-2113

(608) 251-5000

QBMAD1\104485

6

IVET-00000220

A

*Proliferative Enteritis*

# Etiology of Proliferative Enteropathy

C.J. Gebhart[1], S. McOrist[2], and G.H.K. Lawson[2]
Div. of Comparative Medicine, U. of Minnesota
Minneapolis, MN 554351
and Department of Veterinary Pathology
University of Edinburgh, Scotland EH25 9RG[2]

## Introduction

Proliferative enteropathy or enteritis of pigs is characterized by hyperplasia of crypt epithelial cells in the intestine. It is a transmissible disease that affects weaned pigs of all ages. Recognized variously as intestinal adenomatosis, necrotic enteritis, regional ileitis, and proliferative hemorrhagic enteropathy, the disease presents either as an acute hemorrhagic syndrome that results in death, or as a nonhemorrhagic syndrome that causes chronic weight loss. In all manifestations, intestinal cryptal epithelial cells proliferate, thickening the walls of the ileum, jejunum, or large intestine. Small, curved, intracellular organisms are present in the apical cytoplasm of proliferating cells. Experimental transmission studies strongly suggest that the intracellular organisms are required for transmission of proliferative enteropathy and are closely associated with the onset of early lesions.[1]

There has been considerable confusion in the literature about the identity of these intracellular organisms. Previous studies, using immunohistochemical techniques, have suggested that the intracellular organisms observed in all forms of the disease were similar, if not identical, to each other. Those organisms morphologically resemble the *Campylobacter* species. Several *Campylobacter* species have been suggested as playing a role in the disease or have been tentatively identified as the intracellular organisms. However, the disease has not been transmitted by pure cultures of any *Campylobacter* species isolated from pigs with proliferative enteropathy.[1]

## Identity of the Intracellular Organisms

The identity of the intracellular organism has been determined using a novel genetic technique. A portion of the genome of the intracellular organism was isolated, without culture, and amplified so that it could be sequenced and compared to sequences from other organisms. This technique, known as 16S ribosomal DNA sequence phylogeny, was used to definitively identify the intracellular organism of proliferative enteropathy. For this, intracellular organisms were released and purified from the proliferative cells without using culture techniques. After DNA purification, highly conserved primers and the polymerase chain reaction technique were used to amplify the 16S ribosomal DNA. The products were then sequenced and the sequences were compared to those of the *Campylobacter* species and other groups of organisms. The sequences obtained did not align with any *Campylobacter* sequences, but did align with the sequences of some *Desulfovibrio* species. Therefore, phylogenetic analysis showed that these intracellular organisms are related to the strictly anaerobic, sulfur-reducing bacteria, rather than to any *Campylobacter* species. These results, and further morphological characterization, have established this organism as a new genus and species, named Ileal Symbiont Intracellularis (IS-intracellularis).[2]

## Transmission of Proliferative Enteropathy

IS-intracellularis has not yet been cultivated on conventional media, but has been grown and maintained in a rat enterocyte cell line.[3] Pigs orally inoculated with these infected cell cultures developed

264

IVET-00000222

# EXHIBIT G

**From:** Desh, George
**Sent:** Monday, January 14, 2013 10:54 PM
**To:** gregbonifield@quinnemanuel.com
**Cc:** MGraham@MNAT.com; raynimrod@quinnemanuel.com; aaronkaufman@quinnemanuel.com; dfahnestock@MNAT.com; *dmoore@Potteranderson.com1; *rhorwitz@Potteranderson.com; Hales, Bryan S.; Pals, Mark A.; Hollis, Amanda; Santhanam, Hari; Miller, Jennifer A.
**Subject:** Intervet v. Vetmedica: Disclosure of Lawrence Goffney Under Protective Order

Greg,

We are noticing Mr. Lawrence Goffney as a Consultant to whom CONFIDENTIAL and HIGHLY CONFIDENTIAL materials may be disclosed pursuant to paragraphs 6(c) and 7 of the Stipulated Protective Order (D.I. 101).  Attached is a signed undertaking by Mr. Goffney along with his CV, which sets forth his previous consulting experience.  At your earliest convenience, please let us know if Mr. Goffney is cleared under the Protective Order.

Sincerely,
George Desh

**George Desh**
Kirkland & Ellis LLP
300 North LaSalle, Chicago, IL 60654
TEL +1-312-862-2684 FAX +1-312-862-2200
george.desh@kirkland.com

2

# EXHIBIT H

Sent: Tuesday, January 15, 2013 7:46 PM
To: Greg Bonifield
Cc: Desh, George; MGraham@MNAT.com; Ray Nimrod; Aaron Kaufman; dfahnestock@MNAT.com;
*dmoore@Potteranderson.com1; *rhorwitz@Potteranderson.com; Hales, Bryan S.; Pals, Mark A.;
Santhanam, Hari; Miller, Jennifer A.
Subject: Re: Intervet v. Vetmedica: Disclosure of Lawrence Goffney Under Protective Order

Greg,

Expert disclosures are not due for another week and the information you seek, i.e. the
particular topics on which we intend to offer Mr. Goffney's testimony, is the subject of
those disclosures. Moreover the topics on which we might intend to offer Mr. Goffney's
testimony, and your assertion that certain testimony in Delaware is "highly unusual" should
have no bearing on whether plaintiffs have any objection to the disclosure of confidential
information to him. If you have an objection or potential objection to disclosure of
confidential information to Mr. Goffney, please state that now so we may attempt to resolve
it without delay.

Regards,

Amanda

On Jan 15, 2013, at 7:09 PM, "Greg Bonifield" <gregbonifield@quinnemanuel.com> wrote:

> George,
>
> Please let us know tomorrow the topics on which you intend to offer Mr. Goffney's
testimony.  Given that it would be highly unusual to have a patent lawyer testify in
Delaware, we need this information so that we can better consider our response.
>
> Greg
> _____
> From: Desh, George [george.desh@kirkland.com]
> Sent: Monday, January 14, 2013 11:54 PM
> To: Greg Bonifield
> Cc: MGraham@MNAT.com; Ray Nimrod; Aaron Kaufman; dfahnestock@MNAT.com;
*dmoore@Potteranderson.com1; *rhorwitz@Potteranderson.com; Hales, Bryan S.; Pals, Mark A.;
Hollis, Amanda; Santhanam, Hari; Miller, Jennifer A.
> Subject: Intervet v. Vetmedica: Disclosure of Lawrence Goffney Under Protective Order
>
> Greg,
>
> We are noticing Mr. Lawrence Goffney as a Consultant to whom CONFIDENTIAL and HIGHLY
CONFIDENTIAL materials may be disclosed pursuant to paragraphs 6(c) and 7 of the Stipulated
Protective Order (D.I. 101).  Attached is a signed undertaking by Mr. Goffney along with his
CV, which sets forth his previous consulting experience.  At your earliest convenience,
please let us know if Mr. Goffney is cleared under the Protective Order.
>
> Sincerely,
> George Desh
>
> George Desh
> Kirkland & Ellis LLP
> 300 North LaSalle, Chicago, IL 60654
> TEL +1-312-862-2684 FAX +1-312-862-2200
> george.desh@kirkland.com
>

```
>
> ************************************************************
> IRS Circular 230 Disclosure:
> To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we
inform you that any tax advice contained in this communication (including any attachments)
was not intended or written to be used, and cannot be used, by any taxpayer for the purpose
of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting,
marketing or recommending to another party any tax-related matters addressed herein.
>
> The information contained in this communication is confidential, may be attorney-client
privileged, may constitute inside information, and is intended only for the use of the
addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this communication or any part thereof is strictly
prohibited and may be unlawful. If you have received this communication in error, please
notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy
this communication and all copies thereof, including all attachments.
> ************************************************************
```

# EXHIBIT I

1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4
      GALDERMA LABORATORIES,    :    CIVIL ACTION
 5    L.P., GALDERMA S.A. and   :
      GALDERMA RESEARCH AND     :
 6    DEVELOPMENT, S.N.C.       :
                                :
 7                  Plaintiffs, :    (Consolidated)
                                :
 8         vs.                  :
                                :
 9    TOLMAR, INC., and ACTAVIS :
      MID ATLANTIC LLC,         :
10                              :
                    Defendants. :    NO. 10-00045 (LPS)
11

12                            - - -

13                         Wilmington, Delaware
                           Friday, February 17, 2012
14                         10:03 o'clock, a.m.

15                            - - -

16    BEFORE:  HONORABLE LEONARD P. STARK, U.S.D.C.J.

17                            - - -

18    APPEARANCES:

19
                   MORRIS, NICHOLS, ARSHT & TUNNELL
20                 BY:  MARYELLEN NOREIKA, ESQ.

21
                              -and-
22

23

24                                   Valerie J. Gunning
                                     Official Court Reporter
25
```

58

1    that context, the Court thinks, as a practical matter, the

2    issues should be tried and a more fine and detailed and

3    careful analysis will await the post-trial opinion, if

4    necessary, after the Court has heard all of the evidence.

5              So that's the ruling on the motion to amend.

6    I'm going to go through the motions in slightly different

7    order than they were argued.

8              Next, with respect to Galderma's motion to

9    strike the testimony of Mr. Steinert, the legal expert, I've

10   decided to deny that motion.  I have not had to decide yet

11   whether I am going to follow the general practice in this

12   district of not allowing legal experts or not.  This is the

13   first time I've had to come close to deciding it.  It comes

14   up in the context of a bench trial where you each have a

15   legal expert.

16             I'm going to give you a limited number of hours.

17   If you want to use some of that time to present a legal

18   expert to go through the evidence, I'm going to allow you to

19   do it, but it will be up to you as to whether or not to

20   spend your time doing that.  Clearly, there's no risk of

21   jury confusion in this case, and I think we can manage not

22   to be confused either by the testimony that we hear, if you

23   choose to present it.

24             The other various motions to exclude or preclude

25   or strike I am not ruling on today.  What I want the parties

# EXHIBIT J

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT K

THIS EXHIBIT HAS BEEN
REDACTED IN ITS ENTIRETY

# EXHIBIT L

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT M

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY