# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERVET INC., d/b/a MERCK ANIMAL HEALTH and THE ARIZONA BOARD OF REGENTS, | ) ) ) |
| | ) C.A. No. 11-595-LPS |
| Plaintiffs/Counterclaim Defendants, | ) **JURY TRIAL DEMANDED** |
| v. | ) |
| | ) **PUBLIC VERSION** |
| BOEHRINGER INGELHEIM VETMEDICA, INC., | ) ) |
| | ) |
| Defendant/Counterclaim Plaintiff. | ) |

## VETMEDICA'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR LACK OF WRITTEN DESCRIPTION UNDER 35 U.S.C. § 112

OF COUNSEL:

Mark A. Pals, P.C.
Bryan S. Hales, P.C.
Amanda Hollis
Hari Santhanam
Vishesh Narayen
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Tel: (312) 862-2011

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant/Counterclaim Plaintiff Boehringer Ingelheim Vetmedica, Inc.*

Dated: August 30, 2013
Public Version Dated: September 13, 2013
1121047 / 37150

## TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.    SUMMARY OF ARGUMENT .................................................................................. 1

III.   BACKGROUND AND STATEMENT OF UNDISPUTED FACTS ............................ 2

    A.   Proliferative Enteritis. ............................................................................. 2

    B.   The '059 Patent. ....................................................................................... 3

    C.   Prosecution History of the '059 Patent. ................................................. 3

    D.   ATCC 55370 Is Unavailable. ................................................................... 5

    E.   Plaintiff Intervet's Own Testing Indicates that ATCC 55370 ██████
           ██████████ and that ████████████. .................................. 6

IV.    LEGAL STANDARDS ............................................................................................ 8

    A.   Summary Judgment. ................................................................................ 8

    B.   The Written Description Requirement. .................................................... 8

    C.   Use of Biological Deposits to Fulfill the Written Description Requirement. ......... 9

V.     ARGUMENT .......................................................................................................... 10

    A.   Claim 1 of the '059 Patent Is Invalid Because ATCC 55370 Is Necessary
        and Unavailable. ..................................................................................... 10

        1.   The Patent Office Found that ATCC 55370 Is Necessary ........................ 10

        2.   ATCC 55370 Is Necessary Because Those of Ordinary Skill In the
            Art Could Not Adequately Describe *Lawsonia intracellularis*
            When the Patent Was Filed. ....................................................... 11

        3.   The '059 Patent is "Fatally Defective" Because ATCC 55370 Is
            Unavailable. ............................................................................... 12

    B.   Claim 1 of the '059 Patent Is Invalid Because The Four Corners of the
        Patent Do Not Describe a Biologically Pure Culture of *Lawsonia
        intracellularis.* ...................................................................................... 12

    C.   Claim 1 of the '059 Patent Is Invalid Because the Patent Lacks Sufficient
        Written Description for a Vaccine against *Lawsonia intracellularis.* .................. 14

    D.   Claim 1 of the '059 Patent Is Invalid Because the Patent Lacks Written
        Description for Cultures of All Host Cell Types. ................................................. 16

VI.    CONCLUSION ...................................................................................................... 17

## I.      NATURE AND STAGE OF THE PROCEEDINGS

The Court issued a claim construction Order on December 7, 2012 (D.I. 154), fact and expert discovery is largely complete, and trial is set for December 9, 2013 (D.I. 195 at 4).

## II.     SUMMARY OF ARGUMENT

The patent-in-suit[1] fails to comply with the written description requirement for several reasons pertinent to this motion.  *First*, the biological deposit (ATCC 55370) associated with the patent, and purportedly containing the claimed culture, is unavailable.  The prosecution history makes clear that ATCC 55370 is necessary to satisfy the written description requirement and was critical to allowance of the claims.  Those of ordinary skill in the art in 1992 did not know the characteristics of the claimed bacterium and could not have reasonably concluded from the words of the patent alone that the inventors possessed a pure culture of the bacterium.  From 2001-2009, however, Plaintiffs actively ordered, consumed and threw away all available supplies of ATCC 55370, and failed to replenish the deposit despite multiple requests by the ATCC to do so.  Plaintiffs failed to honor their commitment to publicly maintain and replenish the deposit, and the absence of this necessary deposit is fatal to the patent's written description.

*Second*, one of ordinary skill would not have reasonably believed the applicants possessed a biologically pure culture of *Lawsonia*.  ATCC 55370 is part of the patent specification and recited in the claim language.  Plaintiffs' own undisputed testing of ATCC 55370 shows the applicants did not possess such a culture.  ██████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████████ One of ordinary skill would have reached the same results.

---

[1] The '059 patent-in-suit can be found in the appendix at D0414.

***Third***, the patent fails to show the applicants had invented cultures of *Lawsonia* vaccines. The written description must be commensurate with the full scope of claim 1 as construed. Although the patent mentions in passing that "envisioned uses" of the claimed culture include preparing "bacterin" or "inactivated preparations" (i.e., killed bacteria), such a "wish or plan" as a matter of law fails to satisfy the written description requirement. Worse, the patent does not even provide a "wish or a plan," for attenuating bacteria to create avirulent live organisms such as those used in the accused Enterisol® Ileitis vaccines.

***Fourth***, the patent lacks written description for cultures of all host cells. The only host cells the specification describes the applicants as having used are Henle 407 cells. And although the patent says other cell lines "may" be used, it does not indicate the applicants had ever used, or were even capable of using, other cell lines to make a pure culture of *Lawsonia*. *Lawsonia* had not yet been characterized and, thus, no one knew in 1992 all the mammalian cell lines in which it could be cultivated.

Therefore, this Court should grant summary judgment that claim 1 of the patent-in-suit is invalid for lack of written description.

## III.   BACKGROUND AND STATEMENT OF UNDISPUTED FACTS

### A.   Proliferative Enteritis.

Proliferative Enteritis (PE) is an infectious disease of pigs, hamsters and a variety of other animals. In pigs, this disease is referred to as porcine proliferative enteritis or proliferative enteropathy. (Fenwick at ¶17). Initially, those of ordinary skill in the art believed PPE was caused by the *Campylobacter* bacteria. (D0496). But later—after the '059 patent application was filed—other researchers identified and classified the virulent bacteria that cause PE as a

unique genus and species and it was ultimately named *Lawsonia intracellularis*. (Fenwick at ¶21).

### B.    The '059 Patent.

Plaintiffs accuse Vetmedica of infringing only claim 1 of U.S. Patent No. 5,610,059 ("the '059 patent"), which issued from an application filed on November 9, 1992.  Claim 1 reads:

> A biologically pure culture of a mammalian host cell infected by an obligate intracellular bacterium that causes porcine proliferative enteritis after inoculation into pigs having all of the identifying characteristics of ATCC Accession No. 55370.

ATCC Accession No. 55370 ("ATCC 55370") refers to the biological material that the applicants deposited with the American Type Culture Collection ("ATCC").  ('059 patent at 8:14-22).  This Court construed claim 1 in relevant part as follows (D.I. 154):

| Claim Language | Court's Construction |
|---|---|
| "a biologically pure culture of a mammalian host cell [infected by an obligate intracellular bacterium]" | "a culture of a mammalian host cell infected by an isolated bacterium, without any other cells, microorganisms, or viruses" |
| "an obligate intracellular bacterium that causes porcine proliferative enteritis after inoculation into pigs" | "a bacterium that is *Lawsonia intracellularis* and that causes porcine proliferative enteritis after inoculation into pigs in its virulent form" |

### C.    Prosecution History of the '059 Patent.

During prosecution of the '059 patent, the Examiner rejected the claims several times for lack of written description and enablement, emphasizing the need for a biological deposit of the alleged invention.  The PTO twice rejected the claims because "the bacterium and cell line are essential to the claimed invention" and "[t]he specification does not disclose a repeatable process to obtain the cell line and it is not apparent if the cell line is readily available to the public." (D1332; *see also* D1319-20).  To overcome these rejections, the applicants twice assured the PTO that they "have, in fact, made a deposit under the terms of the Budapest Treaty with the

ATCC" and that "the strain will be irrevocably and without restriction released to the public upon the issuance of this patent application as a patent." (D1326, D1344-15). They also argued that one could identify the bacterium as follows:

> Example 3 . . . [describes] the dimensions of the bacterium and the morphology of enterocytes isolated from pigs inoculated with cells containing the bacterium. The pathology of PPE is well characterized and is described in the background section of the application. Thus, upon inoculation, one of ordinary skill would be able to determine whether PPE was caused by the organism.

(D1344-45). But the PTO disagreed:

> [A]n adequate written description is lacking . . . There is **no indication regarding morphological and physiological features of the microorganism except size. Thus the skilled artisan would not know when the agent had been obtained.** In view of the insufficient description, the disclosure is deemed to lack sufficient guidelines to permit those skilled in the art to practice the invention without excessive experimentation.

(D1351 (emphasis added)). The applicants again tried to overcome the rejections by arguing that one of skill could use size, clinical tools, and culture methods to identify the organism. (D1358). But the PTO maintained its rejection, explaining that "[s]ize alone is not a determining factor," "the fact that the claimed organism must exist within a host is not a morphological or physiological feature. Culturing each and every organism with the required size dimensions to determine whether that organism is a strict intracellular organism would require undue experimentation," and "the skilled artisan would have to inoculate a pig just to determine whether the selected organism caused PPE." (D1366-67). The Examiner once again emphasized the critical nature of the ATCC deposit:

> [T]he organism itself has not been adequately defined. **The only way in which a skilled artisan can obtain the claimed organism is through [the] ATCC where the organism is located in the Henle 407 cell line.**

(D1368 (emphasis added)). The applicants repeated their prior arguments a fourth time, (D1372-73), but the PTO held firm, and allowed the claims only after an Examiner's Amendment that

4

expressly required the claimed culture to have "**all** of the identifying characteristics of ATCC

Accession No. 55370." (D1379 (emphasis added)).

**D.   ATCC 55370 Is Unavailable.**

There is no dispute that ATCC 55370 is unavailable.  (B0026-27).  Between 2001 and

2009, Plaintiff Intervet ordered, consumed, and threw away all available supplies of the deposit

at the ATCC.  (B0026–27).

Plaintiffs have taken further actions preventing Vetmedica and others from accessing the

55370 deposit

Plaintiffs also continue to refuse to produce any

5

samples or tests relating to cultures derived from ATCC 55370 that they apparently collected from Dr. Joens' lab. (D.I. 210, 226; E0002.

### E. Plaintiff Intervet's Own Testing Indicates that ATCC 55370 Did Not Contain *Lawsonia* and that It was Contaminated.

Plaintiff Intervet has attempted to grow and analyze ATCC 55370 several times over the last decade.

6



IV.    **LEGAL STANDARDS**

A.    **Summary Judgment.**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). Although invalidity must be established by clear and convincing evidence, the Federal Circuit routinely affirms grants of summary judgment of invalidity when a patent specification fails to comply with the written description requirement of 35 U.S.C. § 112. *See, e.g.*, *Boston Sci. Corp. v. J&J*, 647 F.3d 1353, 1369 (Fed. Cir. 2011); *Billups-Rothenberg, Inc. v. Assoc. Reg'l & Univ. Pathologists, Inc.*, 642 F.3d 1031, 1039 (Fed. Cir. 2011); *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008); *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 929-30 (Fed. Cir. 2004).

B.    **The Written Description Requirement.**

A patent is invalid if the specification fails to comply with the written description requirement of 35 U.S.C. § 112. *Boston Sci.*, 647 F.3d at 1361-62. "To satisfy the written description requirement, the applicant must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrate that by disclosure in the specification of the patent." *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1348 (Fed. Cir. 2011). "[T]he purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'" *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353-54 (Fed. Cir. 2010) (*en banc*). "A mere wish or plan for obtaining the claimed invention is not adequate written description." *Centocor*, 636 F.3d at 1348 (citation and internal quotations marks omitted).

8

Because "the hallmark of written description is disclosure," assessing compliance with the written description requirement "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad*, 598 F.3d at 1351. "Based on that inquiry, the specification must describe an invention understandable to that skilled artisan *and show that the inventor actually invented the invention claimed.*" *Id.* (emphasis added). Because it is axiomatic that "one cannot describe what one has not conceived," *Fiers v. Revel*, 984 F.2d 1164, 1171 (Fed. Cir. 1993), "conception *is* a prerequisite to an adequate written description." *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1367 n.13 (Fed. Cir. 2006) (emphasis original).[3]

### C.    Use of Biological Deposits to Fulfill the Written Description Requirement.

Biological deposits referenced in the specification are part of the written description. *Ariad*, 598 F.3d at 1351; *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 970 (Fed. Cir. 2002). A publicly available biological deposit is necessary "[f]or biological inventions, for which providing a description in written form is not practicable." *Enzo*, 323 F.3d at 970; *see also In re Lundak*, 773 F.2d 1216, 1220-21 (Fed. Cir. 1985). As the Federal Circuit has recognized, a biological deposit is necessary "[w]here the invention involves a biological material and words alone cannot sufficiently describe how to make and use the invention in a reproducible manner." *See, e.g.*, *Enzo*, 323 F.3d at 965 (quoting Manual of Patent Examining Procedure (MPEP) § 2402).

---

[3] Plaintiffs' expert applies the wrong standard by suggesting that whether the inventors actually had a pure culture of *Lawsonia* as a matter of scientific fact is irrelevant to written description. (A0033, A0035, A0046).

9

Consistent with the Budapest Treaty,[4] biological deposits must be maintained publicly available in a depository such as the ATCC for "a term of at least thirty (30) years." 37 C.F.R. § 1.806. Additionally, "[a] deposit of biological material that is capable of self-replication . . . must be viable at the time of deposit and during the term of deposit." 37 C.F.R. § 1.807. Additionally, "all restrictions imposed by the depositor on the availability to the public of the deposited material [must] be irrevocably removed upon the granting of the patent." § 1.808(a)(2). Biological deposits ensure "the *quid pro quo* of the patent system; the public must receive meaningful disclosure in exchange for being excluded from practicing the invention." *Enzo*, 323 F.3d at 970. If a patentee fails to maintain a deposit, the deposit cannot be used to satisfy the written description requirement. 37 C.F.R. § 1.805(d). Thus, the "lack of a necessary deposit" renders a patent "fatally defective for failure to comply with the first paragraph of 35 U.S.C. 112." MPEP § 2411.04.

## V.    ARGUMENT

### A.    Claim 1 of the '059 Patent Is Invalid Because ATCC 55370 Is Necessary and Unavailable.

#### 1.    The Patent Office Found that ATCC 55370 Is Necessary

The prosecution history of the '059 patent makes clear that ATCC 55370 is necessary to comply with the written description requirement and was critical to the PTO allowing the patent. As discussed above, the PTO refused multiple times to issue the patent without the applicants' express assurances that they had made a biological deposit pursuant to the Budapest Treaty.

The applicants did not contest the need to make a deposit. Only after the applicants twice represented that they had made the requisite deposit, and only after "ATCC 55370" was written

---

[4] The Budapest Treaty is a 1977 WIPO treaty, to which the United States is a signatory, that sets out a framework for the recognition of biological deposits for purposes of patent eligibility.

into the claims, did the PTO withdraw its written description and enablement rejections and grant

the patent.

> **2.    ATCC 55370 Is Necessary Because Those of Ordinary Skill In the Art Could Not Adequately Describe *Lawsonia intracellularis* When the Patent Was Filed.**

As the PTO correctly concluded, the claimed invention is a quintessential example of an

invention that "words alone cannot sufficiently describe" and, thus, requires a biological deposit.

*See, e.g., Enzo*, 323 F.3d at 965 (quoting MPEP § 2402).  In 1992, *Lawsonia intracellularis* was

an organism obtained from nature, not yet uniquely identified or characterized, and not readily

available to the public.  *Cf. Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1336 (Fed. Cir. 2006)

(finding biological deposit not necessary "to meet written description requirement *if* the

biological material is known and readily available to the public" (emphasis added)).  Those

skilled in the art did not characterize *Lawsonia intracellularis* until *after* the November 9, 1992

filing date.[5]  (D0387; D1296).  Thus one of skill in the art in November 1992 would not have

known how to identify *Lawsonia* simply by a textual description.  Nor would they have been

able to conclude the inventors possessed it without a sample they could test.  (Fenwick at ¶¶ 36–

37).

The 2009 Pfizer patent application, on which Plaintiffs rely, does not suggest otherwise.

Plaintiffs rely heavily on the statement: "Joens and Glock (U.S. Patent No. 5,610,059) describe

and claim the isolation and characterization of a PPE organism and reproduction of the disease

using the organism, which was previously referred to as PPE-causing agent, ileitis agent, IL-A,

ATCC No. 55370, now known as *Lawsonia intracellularis*."  (A0032 (citing D0070)).  But this

---

[5] The name "*Lawsonia intracellularis*" itself was not officially coined until 1995 in honor of Dr. Gordon Lawson who first identified and cultured the bacteria.

statement was made seventeen years after the '059 patent was filed and does not address whether the '059 patent sufficiently described a biologically pure culture of *Lawsonia* as of 1992.  During that seventeen-year interval, numerous papers describing the characteristics of *Lawsonia* had been published (D0387, D1296-1301), and Dr. Joens had put himself out as a researcher in this space and, indeed, had published his research on *Lawsonia intracellularis* in his Joens 1997 article.  (D0419-26).  Thus, it is not surprising that someone would state off-hand—after 1992—that he had cultured *Lawsonia*.  And although Plaintiffs seek to attribute the statement in the Pfizer application to named inventor Dr. Connie Gebhart, ███████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███  The fact that people skilled in the art requested, and sought to analyze, ATCC 55370 provides real-world confirmation that they needed the deposit to determine what agent Dr. Joens possessed.  Therefore, ATCC 55370 is necessary to satisfy the written description requirement.

### 3. The '059 Patent is "Fatally Defective" Because ATCC 55370 Is Unavailable.

There is no dispute that, despite the applicants' assurances during prosecution, ATCC 55370 is unavailable.  Because ATCC 55370 is a necessary deposit and is unavailable, the '059 patent as a matter of law is "fatally defective for failure to comply with the first paragraph of 35 U.S.C. 112." MPEP § 2411.04.  Therefore, this Court should grant summary judgment that claim 1 of the '059 patent is invalid for lack of written description.

**B.     Claim 1 of the '059 Patent Is Invalid Because The Four Corners of the Patent Do Not Describe a Biologically Pure Culture of *Lawsonia intracellularis*.**

Given that the absence of ATCC 55370 renders the written description insufficient as a matter of law, the Court need not look further to the specification.   Nevertheless, the patent specification establishes that one of ordinary skill in the art in 1992 would not have understood that the applicants were in possession of a biologically pure culture of *Lawsonia*. Because ATCC 55370 "is incorporated by reference into the specification" and, indeed, is expressly referenced in the claim language, *Enzo*, 323 F.3d at 965, inquiry into ATCC 55370 itself is an "inquiry into the four corners of the specification," *Ariad*, 598 F.3d at 1351.   Thus, a person of ordinary skill would have considered the *entire* patent, including the contents of ATCC 55370 to determine whether the applicants were in possession of a biologically pure culture of *Lawsonia*.   *See Ariad*, 598 F.3d at 1351.

As discussed above, ATCC 55370 does not contain *Lawsonia* and is not pure. ████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



The rest of the patent specification cannot trump the *Lawsonia*-lacking deposit. Indeed, the only data purporting to show the agent causes PPE is flawed and in fact indicates that the pigs used for testing were previously infected. (*Id.* ¶¶ 84–86). The patent also fails to describe any characteristics of the bacteria that uniquely identify it. For example, the size and shape descriptions provided are consistent with it being a *Campylobacter* species which others in the field previously mistakenly believed caused PPE. (*Id.* ¶ 87).

Therefore, a person of ordinary skill in the art, considering the contents of ATCC 55370, would not have reasonably believed the applicants were in possession of a biologically pure culture of *Lawsonia*. This Court should, therefore, grant summary judgment that claim 1 of the '059 patent is invalid for lack of written description.

**C.     Claim 1 of the '059 Patent Is Invalid Because the Patent Lacks Sufficient Written Description for a Vaccine against *Lawsonia intracellularis*.**

Claim 1 of the '059 patent is also invalid because the patent fails to provide sufficient written description for a vaccine against *Lawsonia intracellularis*. To satisfy the written description requirement, the specification must support that which Plaintiffs accuse; otherwise

---

[6] Besides, other documents from third parties such as Bayer, show that the inventors were not in possession of the claimed invention. *See* FN1, *supra*.

"the scope of the right to exclude, as set forth in the claims [improperly] overreach[es] the scope of the inventor's contribution to the field." *Ariad*, 598 F.3d at 1353–54; *see also Centocor*, 636 F.3d at 1348; *Rochester,* 358 F.3d at 927.   The specification fails to convey possession commensurate with the full scope of claim 1.

Plaintiffs accuse Vetmedica's Enterisol® products of infringement. ███████

████████████████████████████████████████████████

A disease-causing organism is of course not appropriate for use in a vaccine. ███████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████

There is nothing in the patent showing the inventors possessed *any* avirulent forms or strains of *Lawsonia intracellularis*, much less an attenuated vaccine form like the ones they accuse.  Indeed, the specification indicates the allegedly inventive agent would only "eventually lead to" or be "useful for developing" vaccine forms and that *development* of vaccines (not vaccines themselves) were only "envisioned uses for the[ir] PPE-causing agent." ('059 Patent at 2:30-51 (agent "may be studied…to develop…vaccine")).  Thus, the written description makes explicit that the inventors did not possess avirulent forms.  Even when specifying the types of vaccines the inventors merely "envisioned," the inventors listed only "bacterin" or "inactivated preparations," which refer to killed bacteria. ('059 Patent at 4:6-16 (emphasis added)). ███████

███████████████████████████████████████████

███████████████████████████████████████████

The inventors' *"wish or plan"* for future research and "stud[y]" that did not even contemplate attenuated forms is entirely insufficient as a matter of law to show the inventors possessed such forms. *See Centocor*, 636 F.3d at 1348; *Rochester,* 358 F.3d at 927.[7]

> D.   **Claim 1 of the '059 Patent Is Invalid Because the Patent Lacks Written Description for Cultures of All Host Cell Types.**

Claim 1 of the '059 patent is also invalid because the patent fails to provide sufficient written description for cultures of all host cell types. The limitation of claim 1 reciting "a culture of a mammalian host cell" is not limited to cultures of a particular type of mammalian host cell; indeed Plaintiffs are asserting that claim 1 covers cultures of any mammalian host cells, including McCoy cells used to make the accused products. (A0057). Further, the Court has construed claim 1 to cover cultures of "more than a single host cell type." (D.I. 153 at 5–6.) Thus, to satisfy the written description requirement, the specification must support cultures in all mammalian host cell types and cultures of more than a single mammalian host cell type. *Ariad*, 598 F.3d at 1353–54; *see also Centocor*, 636 F.3d at 1348. This it plainly does not do.

The specification of the '059 patent is clear that the applicants only prepared cultures in Henle 407 cells and did not test whether other cell lines could support the claimed culture. Although the specification mentions other "putative host cell lines" ('059 Patent at Table I),

---

[7] In fact, the specification describes only the isolation of a bacterium that *actually causes* PPE after inoculation into pigs, i.e., a bacterium that is virulent. *See, e.g.*, '059 Patent, 2:45–47 ("It is an object of the present invention to provide an . . . organism . . . able to *cause PPE* in a laboratory test animal."); 2:58–60 ("The present invention is directed to the purification of an intracellular bacterial organism which . . . *causes a PPE-like intestinal disease* . . ."); 2:66–3:3 ("The term PPE-causing agent is intended to encompass all such intracellular organisms that . . . *cause macroscopic and microscopic clinical symptoms like those seen in pigs having PPE*.").

simply listing possible host cell lines in a "laundry list" like this is insufficient to satisfy the written description requirement. *See Fujikawa v. Wattanasin*, 93 F.3d 1559, 1571 (Fed. Cir. 1996). Moreover, the specification makes clear that the applicants did not test these other host cell lines and mentions them prospectively as potential cell lines that "may be" used in the future. But again such a "wish or plan" is insufficient as a matter of law. *See Centocor*, 636 F.3d at 1348. The inventors certainly did not indicate they could culture avirulent organisms in all of the mammalian host cell types they list. As discussed above, the inventors indicated they possessed no avirulent forms whatsoever.

Further, as of the November 9, 1992 filing date, those of ordinary skill in the art would not have reasonably understood based on the patent specification that *Lawsonia* could be cultured in all cell lines.[8] (Fenwick at ¶¶ 104–07). Indeed, Intervet scientists state in one of their own 2009 patent applications that "there are hardly any non-epithelial cells known to sustain the growth of *Lawsonia*" and that the "only exception to that rule found so far are McCoy cells" (D1169). Thus, when the '059 patent was filed in 1992, the patent specification would not have conveyed to those of ordinary skill in the art that *Lawsonia* could be grown in all mammalian host cells or that the applicants possessed a culture of *Lawsonia* in a mammalian host cell that was representative of all mammalian host cells.

---

[8] Significantly, not all host cells will be viable under the same culture conditions, and the conditions a particular host cell needs may not be suitable for infection by *Lawsonia* bacteria. (Fenwick ¶ 104). And even if a set of culture conditions could be found that are suitable both for the host cells and for *Lawsonia intracellularis*, there was no guarantee that the *Lawsonia intracellularis* will infect and multiply inside the host cells, because certain mammalian cell lines simply are not suitable for culturing *Lawsonia intracellularis*. (Id.).

## VI.    CONCLUSION

For the foregoing reasons, Vetmedica requests that the Court grant summary judgment

that the '059 patent is invalid for lack of written description pursuant to 35 U.S.C. § 112.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Mark A. Pals, P.C.
Bryan S. Hales, P.C.
Amanda Hollis
Hari Santhanam
Vishesh Narayen
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Tel:  (312) 862-2011

Dated:  August 30, 2013
Public Version Dated: September 13, 2013
1121049 / 37150

By:    /s/ Richard L. Horwitz
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE  19801
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      bpalapura@potteranderson.com

*Attorneys for Defendant/Counterclaim*
*Plaintiff Boehringer Ingelheim Vetmedica, Inc.*

18

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on September 13, 2013, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on September 13, 2013, the attached document was Electronically Mailed to the following person(s):

Mary B. Graham
Stephen J. Kraftschik
Derek J. Fahnestock
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE  19899-1347
mgraham@mnat.com
mbgeservice@mnat.com
skraftschik@mnat.com
dfahnestock@MNAT.com

Raymond N. Nimrod
Gregory D. Bonifield
Aaron S. Kaufman
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
raynimrod@quinnemanuel.com
gregbonifield@quinnemanuel.com
aaronkaufman@quinnemanuel.com
Intervet_UAZ@QuinnEmanuel.com

By:  /s/ Richard L. Horwitz
Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

1021568/37150