IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERVET INC., d/b/a MERCK ANIMAL HEALTH and THE ARIZONA BOARD OF REGENTS,<br><br>       Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>BOEHRINGER INGELHEIM VETMEDICA, INC.,<br><br>       Defendant/Counterclaim Plaintiff. | )<br>)<br>) C.A. No. 11-595-LPS<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>) **PUBLIC VERSION**<br>)<br>)<br>)<br>) |

**VETMEDICA'S OPENING BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
BARRING PRE-SUIT DAMAGES PURSUANT TO THE DEFENSE OF LACHES**

OF COUNSEL:

Mark A. Pals, P.C.
Bryan S. Hales, P.C.
Amanda Hollis
Hari Santhanam
Vishesh Narayen
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Tel: (312) 862-2011

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant/Counterclaim
Plaintiff Boehringer Ingelheim Vetmedica, Inc.*

Dated: August 30, 2013
Public Version Dated: September 13, 2013
1122598/ 37150

# TABLE OF CONTENTS

Page

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II. SUMMARY OF ARGUMENT .................................................................................... 1

III. BACKGROUND AND STATEMENT OF UNDISPUTED FACTS ............................ 1

    A. Plaintiffs Knew or Should Have Known About Their Assertion of Infringement More Than 10 Years Before Filing Suit............................................ 1

    B. Important Evidence Has Been Lost, Forgotten, Or Destroyed. ............................... 4

    C. Vetmedica Invested Significantly in Enterisol® During Plaintiffs' Delay............. 7

IV. ARGUMENT .................................................................................................................. 8

    A. Summary Judgment Standard ................................................................................. 8

    B. Laches ..................................................................................................................... 8

    C. Plaintiffs Cannot Rebut The Presumption. ........................................................... 11

    D. Regardless of the Presumption, Laches Applies to Bar Pre-Suit Damages. ......... 13

        1. Plaintiffs' Delay Was Unreasonable. ........................................................ 13

        2. Vetmedica Has Suffered both Evidentiary and Economic Prejudice. .................................................................................................. 13

V. CONCLUSION ............................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ................................................................................... passim

*Adelberg Labs., Inc. v. Miles, Inc.*,
  921 F.2d 1267 (Fed. Cir. 1990) ........................................................................................ 14

*Advanced Hydraulics, Inc. v. Eaton Corp.*,
  415 F. Supp. 283 (N.D. Ill. 1976) ............................................................................. 10, 14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................................... 8

*Avocet Sports Tech. Inc v. Polar Electro Inc*,
  No C-12-02234 EDL, 2013 WL 1729668 (N.D. Cal. Apr. 16, 2013) ............................. 9

*Bound v. Crazy Helmet, Inc.*,
  106 F.3d 424 (Fed. Cir. 1997) .......................................................................................... 11

*Bound v. Spencer Gifts, Inc.*,
  C.A. No. 95-2216, 1996 WL 556657 (E.D. Pa. Oct. 1, 1996) ....................................... 10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................................... 8

*Coleman v. Corning Glass Works*,
  619 F. Supp. 950 (W.D.N.Y. 1985) ................................................................................ 13

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
  679 F. Supp. 2d 512 (D. Del. 2010) ......................................................................... passim

*Hall v. Aqua Queen Mfg., Inc.*,
  93 F.3d 1548 (Fed. Cir. 1996) ..................................................................................... 9, 13

*Integrated Cards, L.L.C. v. McKillip Indus., Inc.*, 06 C 2071,
  No. 06 C 2071, 2009 WL 4043425 (N.D. Ill. Nov. 19, 2009) ......................................... 9

*Lautzenhiser Techs., LLC v. Sunrise Med. HHG, Inc.*,
  752 F. Supp. 2d 988 (S.D. Ind. 2010) ............................................................................... 9

*Lemelson v. Carolina Enterprises, Inc.*,
  541 F. Supp. 645 (S.D.N.Y. 1982) .................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ................................................................................... passim

*Adelberg Labs., Inc. v. Miles, Inc.*,
  921 F.2d 1267 (Fed. Cir. 1990) ........................................................................................ 14

*Advanced Hydraulics, Inc. v. Eaton Corp.*,
  415 F. Supp. 283 (N.D. Ill. 1976) ............................................................................. 10, 14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................................... 8

*Avocet Sports Tech. Inc v. Polar Electro Inc*,
  No C-12-02234 EDL, 2013 WL 1729668 (N.D. Cal. Apr. 16, 2013) ............................. 9

*Bound v. Crazy Helmet, Inc.*,
  106 F.3d 424 (Fed. Cir. 1997) .......................................................................................... 11

*Bound v. Spencer Gifts, Inc.*,
  C.A. No. 95-2216, 1996 WL 556657 (E.D. Pa. Oct. 1, 1996) ....................................... 10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................................... 8

*Coleman v. Corning Glass Works*,
  619 F. Supp. 950 (W.D.N.Y. 1985) ................................................................................ 13

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
  679 F. Supp. 2d 512 (D. Del. 2010) ......................................................................... passim

*Hall v. Aqua Queen Mfg., Inc.*,
  93 F.3d 1548 (Fed. Cir. 1996) ..................................................................................... 9, 13

*Integrated Cards, L.L.C. v. McKillip Indus., Inc.*, 06 C 2071,
  No. 06 C 2071, 2009 WL 4043425 (N.D. Ill. Nov. 19, 2009) ......................................... 9

*Lautzenhiser Techs., LLC v. Sunrise Med. HHG, Inc.*,
  752 F. Supp. 2d 988 (S.D. Ind. 2010) ............................................................................... 9

*Lemelson v. Carolina Enterprises, Inc.*,
  541 F. Supp. 645 (S.D.N.Y. 1982) .................................................................................. 13

*Mahmood v. Research in Motion Ltd.*,
   No. 11 Civ. 5345(KBF), 2012 WL 1801693 (S.D.N.Y. May 16, 2012) ................................. 12

*Morpho Detection, Inc. v. Smiths Detection Inc.*,
   C.A. No. 2:11CV498, 2012 WL 5879851 (E.D. Va. Nov. 21, 2012) ..................................... 9

*Odetics, Inc. v. Storage Tech. Corp.*,
   919 F. Supp. 911 (E.D. Va. 1996) .............................................................................. 9, 10, 13

*Serdarevic v. Advanced Med. Optics, Inc.*,
   532 F.3d 1352 (Fed. Cir. 2008) .............................................................................................. 10

*St. Clair Intellectual Prop. Consultants, Inc. v. Acer, Inc.*,
   C.A. No. 09-354-LPS, 2013 WL 3367319 (D. Del. July 2, 2013) .................................... 9, 13

*Wanlass v. Gen. Elec. Co.*,
   148 F.3d 1334 (Fed. Cir. 1998) ........................................................................... 8, 9, 10, 12

**Rules**

Fed. R. Civ. P. 56(a) .......................................................................................................................... 7

## I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed this suit on July 6, 2011. (D.I. 1.) Fact and expert discovery has largely concluded, and trial is set for December 9, 2013. (D.I. 195 at 4.)

## II. SUMMARY OF ARGUMENT

The law requires that patentees diligently bring suit against accused infringers. When a patentee unreasonably delays suit to the prejudice of the defendant, laches precludes recovery of pre-suit damages. The patent-in-suit issued in March 1997. Incontrovertible evidence shows Plaintiffs knew of the products now accused of infringement by ▊▊▊▊▊▊▊▊▊▊▊▊ ▊▊▊▊ Yet they did not file suit until July 2011, more than *10 years* later. A delay of six years is *presumptively* unreasonable and prejudicial, shifting the burden to Plaintiffs to offer evidence to justify their delay or show that Vetmedica was not prejudiced. Plaintiffs cannot do so; in response to Vetmedica's interrogatory, they failed to offer *any* explanation. And even if the presumption is rebutted, the totality of evidence proves an unreasonable and prejudicial delay.

## III. BACKGROUND AND STATEMENT OF UNDISPUTED FACTS

### A. Plaintiffs Knew or Should Have Known About Their Assertion of Infringement More Than 10 Years Before Filing Suit.

U.S. Patent No. 5,610,059 issued on March 11, 1997. (D0414). Intervet assertedly became an exclusive licensee by purchasing Bayer's veterinary biologics business in June 2000. (D0154–99; B0005–06). Defendant Vetmedica manufactures and sells Enterisol® Ileitis, a vaccine to protect pigs from proliferative enteritis (PE) (also known as ileitis or enteropathy), a gastrointestinal disease caused by virulent *Lawsonia intracellularis* bacteria. (A0006). ▊▊
▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊
▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ In July 2011, over ten years later, Intervet and the University of Arizona ("Plaintiffs") filed suit, asserting that Enterisol® infringes the '059 patent. (D.I. 1.)

Intervet knew about Enterisol® shortly after its launch in 2001. Dr. Anton Jacobs,[1] Intervet's 30(b)(6) designee regarding Intervet's first awareness of Vetmedica's alleged infringement, admitted Intervet knew about Enterisol® no later than ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇ (C0065 (70:20–71:1), C0060 (17:6–22)). Contemporaneous documents corroborate Dr. Jacobs' admission about Intervet's knowledge. (D0145). Intervet also knew the composition of Enterisol®; as Dr. Jacobs explained, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (C0065 (73:20–23)). The product labels for Enterisol® read: "*Lawsonia Intracellularis* Vaccine, Avirulent Live Culture." (D0383; D0385). Thus, ▇▇▇▇, Intervet knew Vetmedica was selling a modified live vaccine derived from *Lawsonia intracellularis*, the organism purportedly claimed in the '059 patent.[2] (C0021 (185:10–13)).

Intervet was continuously aware of Enterisol® throughout the past decade, discussing, for example, the market's positive perception of it. (*E.g.*, C0021 (185:10–13) (2001); C0014 (132:2–13) (2004); C0016–17 (145:24–146:3), C0017 (146:10–15) (2005); C0018 (157:16–21), D0120 (2006)). Intervet also noted its view that Enterisol® contained *Lawsonia*. (C0014 (133:13–20), C0022 at 186:11–21 (2004); C0022 at 187:21–188 (2005)). Dr. Jacobs summed up

---

[1] Dr. Jacobs is currently a Senior Project Leader in Intervet's Microbiological Department, has worked on vaccines at Intervet since 1987, and was the leader of Intervet's efforts to develop a *Lawsonia intracellularis* vaccine. (C0059 (10:8–11:4)).

[2] To be clear, Vetmedica disputes that it infringes the '059 patent. What matters here is when Plaintiffs knew or should have known the facts giving rise to their claim for infringement.

2

Intervet's view in 2004: ███████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████ (D0126).

Furthermore, these facts were, or should have been, known by both Plaintiffs shortly after *either* learned of them. Intervet and the University had an obligation to notify each other of possible infringement under the '059 patent license agreement: ███████████

███████████████████████████████████████

██████████████████████████ (D0293 § 10.1). Thus, as soon as Intervet knew facts giving rise to a claim, the University should have too, and vice versa.

Plaintiffs also were aware of Vetmedica's work to develop a vaccine for ileitis before Enterisol® officially launched. In July 2000, shortly after Intervet acquired Bayer's veterinary biologics business, an Intervet attorney wrote to the University about Vetmedica's work:

> ███████████████████████████████████████
> ███████████████████████████████████████
> ███████████████████████████████████████
> ███████████████████████████████████████
> ███████████████████████████████████████

(D0336–37 (emphases added)). Thus, both Plaintiffs knew of Vetmedica's PE vaccine work, and with any diligence would have been aware of their claim as soon as Enterisol® launched.

Even earlier, the University knew Vetmedica was developing a PE vaccine. ██████

███████████████████████████████████████

3

██████████████████████████████████████████
█████████████████████ (D0316–18; D0324–27; D0300–04; D1184–85).

These facts show Plaintiffs actually knew, and most certainly should have known, of the activities they now accuse of infringement.

**B.   Important Evidence Has Been Lost, Forgotten, Or Destroyed.**

Plaintiffs' delay resulted in a loss of evidence crucial to Vetmedica's ability to present a full and fair defense. *First*, as the Court is aware, several of Vetmedica's key defenses are based on the named inventors not actually having pure *Lawsonia*. ATCC 55370, the biological material the inventors deposited with the American Type Culture Collection as their alleged invention, is no longer available; the ATCC deaccessioned it after the named inventors failed to resupply it despite several ATCC requests. (D0005 (2009 request to replenish deposit); D0006–7 (2010 email: deposit is "out of stock"); D0683 (same); D0001–03 (2011 request to replenish deposit); D0004 (2011 inventory of 55370 distribution); D0990 (2011 email: deposit is "out of stock" and "deaccessioned")). Intervet played a significant role in depleting ATCC 55370 over the past decade, acquiring samples on five occasions; the ATCC has not had any available supply of the deposit since Intervet took the last one in 2009. (B0026–27; B0045). Moreover, Intervet scientists ████████████████████████████████████████ (C0135 (175:23–176:19), C0189 (92:20–393:25), C0192 (403:9–17)).

*Second*, lead named inventor Lynn Joens died in November 2012 and Vetmedica was unable to depose him.[3] According to co-inventor Robert Glock, Dr. Joens did █████████

---

[3] Vetmedica noticed Dr. Joens' deposition on August 8, 2012. (D.I. 92.) Despite the then-effective Scheduling Order (D.I. 20) requiring substantially complete document production by May 15, 2012, Plaintiffs would go on to produce approximately 90,000 pages (95% of their entire production) in October 2012, only after a Court Order and after Dr. Joens' initial deposition date. Vetmedica had to postpone the deposition due to Plaintiffs' late production. (D.I. 142 at 2–3; E0019.) (The Special Master criticized Plaintiffs' approach to document

4

██████████████████ (C0004 (69:17–21)), and Plaintiffs rely extensively on Dr. Joens' documents to oppose Vetmedica's defenses (A0002; A0030–31 at ¶¶24–28, A0037–43 at ¶¶172–179, A0046–47 at ¶190).

*Third*, the original licensee, Bayer, ██████████████████ ██████████████████ ██████████ (D0305–15; C0262 (41:4–11), C0263 (48:3–19)). Vetmedica subpoenaed Bayer to obtain documents related to Dr. Joens work, but Bayer had destroyed ████ ██████████████████ (C0070 (9:9–13), C0071 (10:20–12), C0072 (14:14–17:20), C0085–86 (242:19–246:22)). These documents included ██████████ ██████████████████ ██████████████████ ██████████████████ (C0264 (51:24–53:7), C0266 (126:22–127:20), C0267 (132:13–133:2)).

*Fourth*, by way of example, many other crucial documents and materials have been lost:

- Laboratory notebooks documenting the 1990–1991 work of Dr. Harold Stills. Vetmedica asserts Dr. Stills' work isolating *Lawsonia intracellularis* in 1990 is invalidating art. Dr. Stills kept detailed laboratory notes of his work in 1990, but no longer has them. (C0223 (442:20–445:5)). His lab notes contained detail "far beyond what [he] can remember in 23 years." (C0225 (450:10–451:7)). He testified that he most likely lost these notes in a move in 2007. (C0223–24 (445:7–447:6)).

- Documents related to Intervet's purchase of Bayer's veterinary biologics business (from which Intervet claims to derive an exclusive license to the '059 patent). The Asset Purchase Agreement refers to a ██████████████████ that Vetmedica diligently sought, but which Plaintiffs contend cannot be found. (D0165; D.I. 182 at 3; E0002–3; E0014; D.I. 206 at 7–8; F0022–28; C0252–53 (194:13–195:13)). The PPA would contain an agreed ██████████████████████████ ██████ and would be important to the reasonable royalty analysis because it would shed

---

production. (D.I. 206 at 6.)) Thus, Vetmedica had no reasonable opportunity to take his deposition. Moreover, Vetmedica had no reason to believe Dr. Joens was ill and no reason to think his deposition urgently needed to be completed.

light on the value Intervet and Bayer placed on a license to the '059 patent in June 2000 (C0252–53 (194:13–195:13))—close in time to the hypothetical negotiation in this case. Vetmedica subpoenaed Bayer for documents relating to the license agreement and asset purchase, but Bayer had destroyed ███████████████████████████████ ███████████████████████ (C0078 (155:6–156:4), C0079 (179:13–180:11), C0085–86 (242:19–246:22), C0088 (262:19–263:15.)).

- Investment bank Deutsche Bank's valuation of Bayer's business. (*See* D0217; C0250–52 (192:14–194:9); D0209). This would have included ███████████████████ ███████████████████████████ (D0203 ████████ C0250–52 (192:14–194:9)). This would be relevant to reasonable royalty analysis, and it is no longer available. (C0250–52 (192:14–194:9)).

*Fifth*, a number of witnesses have forgotten key information over the years:

- Karin van den Berg, an Intervet scientist who ██████████████████████████ left Intervet in 2007. Plaintiffs rely on her work ████████████████████████████ ██████████████████████ (A0036–37 at ¶170, A0044–45 at ¶182, A0047–48 at ¶192, A0049 at ¶211, A0050–52 at ¶¶215–16). Because Plaintiffs delayed filing suit, when Vetmedica deposed Ms. van den Berg as a third party, she had no relevant documents in her possession, and her memory about her work at Intervet had faded to the point she found it ████████████████████████████ (C0054 (86:10–13)).

- Dr. Rita Manak, Director of the University's Office of Technology Transfer (OTT) from 1990–2000, left the University. (C0041 (34:8–10)). Dr. Manak was directly involved in ████████████████████████████████████████ (C0041 (34:8–10), C0044 (48:11–49:21)). She was also personally involved in ██████████████████████ ██████████████████████ (D0338). Plaintiffs rely on OTT's actions to oppose Vetmedica's inequitable conduct claims. (B0080–81). Because Plaintiffs delayed filing suit, Dr. Manak had left the University and could not remember many details related to the University's patent prosecution and licensing policies and its disclosure of prior art during the prosecution of the '059 patent. (D.I. 159; C0038–39 (23:7–26:9), C0042 (38:13–18), C0047 (76:2–7), C0048 (93:17–23), C0051 (150:1–7), C0051 (152:11–16); E0001).

- Dr. Frank Hartdegen, who replaced Dr. Manak at OTT, can no longer be found. (C0217 (50:12–23), C0219 (59:6–15)). Dr. Hartdegen received the July 2000 letter in which Intervet and the University discussed ████████████████████████ ██████████████████████ (D0333–37), related to Vetmedica's laches defense. He has retired and the University can not reach him. (C0219 (58:2–14)).

- Mike Cusanovich, who was involved in the University's efforts to license the '059 patent to NOBL, died within the last 5 years. (C0030 (28:12–19); D0328–32).

6

### C. Vetmedica Invested Significantly in Enterisol® During Plaintiffs' Delay.

While Plaintiffs sat for ten years, Vetmedica spent ███████ on R&D activities and ███████████ on capital expenditures related to Enterisol® Ileitis. (A0025; A0065; D1241).

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████ Vetmedica also spent ██████████████ on research and development, marketing, meeting customer requirements, and label claim extensions. (C0211 (315:14–316:25); D1241; D0608).

Finally, had Plaintiffs brought suit earlier, Vetmedica could have switched to a non-infringing alternative such as breaking the host cells, ████████████████████████ ████████████████████████████████ (C0196 (43:13–44:4), C0207 (299:20–300:9), C0210–11 (313:22–314:15), C0213–14 (353:18–354:3)). Vetmedica's 30(b)(6) witness, Dr. Eichenmueller, believed ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ (C0206 (296:15–297:11)).

7

## IV. ARGUMENT

### A. Summary Judgment Standard

Summary judgment should be granted if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[M]ere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* The moving party must initially demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After it has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut with facts "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal cites omitted).

### B. Laches

Laches is an equitable defense that precludes recovery of any damages that may have accrued prior to filing suit. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028, 1041 (Fed. Cir. 1992) (en banc). To succeed on a laches defense, the accused infringer ordinarily must show (1) the patentee delayed filing suit for an unreasonable length of time from when it knew or reasonably should have known of its claim against the alleged infringer, and (2) the delay operated to the prejudice of the alleged infringer. *Id.* at 1032.

**Delay Period**: The period of delay for laches begins "at the time the patentee has actual or constructive knowledge of the defendant's potentially infringing activities." *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998). "[A] patentee need not know unequivocally that a device actually infringes before the laches clock begins to run. Rather, he is charged with

8

making the inquiry that a diligent and reasonably prudent patentee would make to determine whether [a] device infringes his patent." *Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911, 917 (E.D. Va. 1996) (internal cites omitted), *vacated on other grounds*, 116 F.3d 1497 (Fed. Cir. 1997). "[S]ales, marketing, publication, or public use of a product similar to or embodying technology similar to the patented invention . . . give rise to a duty to investigate whether there is infringement." *Wanlass*, 148 F.3d at 1338.

**Presumption of Laches**: A patentee's delay is *presumed* unreasonable and prejudicial if it delayed filing suit for more than six years after having actual or constructive knowledge of the alleged infringement. *Aukerman*, 960 F.2d at 1035–36. This presumption shifts the burden to the patentee, who must come forward with affirmative evidence of a legally cognizable excuse for its delay or a lack of prejudice to the accused infringer. *See Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1553–54 (Fed. Cir. 1996); *Aukerman*, 960 F.2d at 1039. If a patentee fails to do so, an accused infringer can remain "utterly mute" on these issues and still prevail on laches. *Aqua Queen*, 93 F.3d at 1553–54; *see also St. Clair Intell. Prop. Consult., Inc. v. Acer, Inc.*, No. CV 09-354-LPS, 2013 WL 3367319, at *4 (D. Del. July 2, 2013) ("As St. Clair fails to rebut the presumption of laches, the Court will grant Defendants' motion."); *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 679 F. Supp. 2d 512, 526 (D. Del. 2010). Courts often find laches when the delay exceeds six years. *See Avocet Sports Tech. Inc v. Polar Electro Inc*, No C-12-02234 EDL, 2013 WL 1729668, at *5 (N.D. Cal. Apr. 16, 2013) (collecting cases).[4]

---

[4] Courts frequently granted or affirm summary judgment based on a presumption of laches. *See, e.g., Wanlass*, 148 F.3d at 1340; *Aqua Queen*, 93 F.3d at 1553–55; *St. Clair*, 2013 WL 3367319, at *2–4; *Avocet Sports*, 2013 WL 1729668, at *5, 10; *Morpho Detection, Inc. v. Smiths Detection Inc.*, No. 2:11CV498, 2012 WL 5879851, at *11 (E.D. Va. Nov. 21, 2012); *Lautzenhiser Techs., LLC v. Sunrise Med. HHG, Inc.*, 752 F. Supp. 2d 988, 1003 (S.D. Ind. 2010); *Crown Packaging*, 679 F. Supp. 2d 529; *Integrated Cards, L.L.C. v. McKillip Indus., Inc.*, No. 06 C 2071, 2009 WL 4043425, at *6 (N.D. Ill. Nov. 19, 2009).

9

**Prejudice**: Prejudice "may be either economic or evidentiary." *Aukerman*, 960 F.2d at 1033; *see also Wanlass*, 148 F.3d at 1337. A party asserting laches need not establish both forms; either is sufficient. *See Wanlass*, 148 F.3d at 1340 ("We do not reach the issue of . . . whether [defendant] suffered economic prejudice because [defendant] undoubtedly suffered evidentiary prejudice . . ."). Evidentiary prejudice is a defendant's inability to present a full and fair defense on the merits due to, for example, the loss of records, the death of a witness, or the unreliability of memories of long past events. *Aukerman*, 960 F. 2d at 1033. It is often "impossible for [a defendant] to know precisely what facts . . . witnesses have forgotten due to the passage of time. A witness who has forgotten a certain category of information is aware of the category, but cannot recall the specifics within the category." *Odetics*, 919 F. Supp. at 922. Thus, a defendant need not "identify with precision" evidence that is unavailable, but can instead show prejudice by identifying categories of lost documents or important testimony. *Id.* "To require more would set an insurmountably high standard for showing evidentiary prejudice." *Id.*

The death or unavailability of important witnesses shows evidentiary prejudice. *See, e.g., Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1360–1361 (Fed. Cir. 2008). The court in *Serdarevic* found the death of three witnesses to be prejudicial. *Id.* at 1360. The death of an inventor in a patent case in particular is highly prejudicial. *See Crown Packaging*, 679 F. Supp. 2d at 527–28; *Advanced Hydraulics, Inc. v. Eaton Corp.*, 415 F. Supp. 283, 284–86 (N.D. Ill. 1976). Even more so when an inventor's reduction to practice is at issue; then, "the loss of the inventor . . . sorely prejudices a defendant." *Advanced Hydraulics*, 415 F. Supp. at 285. Destruction of relevant documents by third parties during the period of delay also shows evidentiary prejudice. *See, e.g., Bound v. Spencer Gifts, Inc.*, C.A. No. 95-2216, 1996 WL 556657, at *4 (E.D. Pa. Oct. 1, 1996), *dismissed voluntarily sub nom. Bound v. Crazy Helmet,*

*Inc.*, 106 F.3d 424 (Fed. Cir. 1997) (evidentiary prejudice where appropriate witnesses discarded relevant documents and could no longer recall when certain products were first made).

Economic prejudice arises when a defendant "will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Aukerman*, 960 F.2d at 1033. Courts look for a change in the economic position of the alleged infringer during the period of delay. *Id.* A defendant "need not show economic prejudice due to *reliance upon* the patentee's delay, but rather must show economic prejudice that *results from* the patentee's delay." *Crown Packaging*, 679 F. Supp. 2d at 526. A patent owner cannot lay silent while damages escalate, particularly, when the defendant could have switched to a noninfringing product. *Aukerman*, 960 F.2d at 1033.

### C. Plaintiffs Cannot Rebut The Presumption.

A presumption of laches applies in this case because Plaintiffs waited more than six years before filing suit. The '059 patent issued on March 11, 1997. Plaintiffs filed suit in July 2011. Intervet admits having actual knowledge of Vetmedica's Enterisol® Ileitis vaccine by ▮▮ ▮▮ ten years earlier. A letter from Intervet to the University shows they recognized in ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* D0336–37). And the University had constructive knowledge even earlier, as shown by its attempts to license the patent to Vetmedica. *See* § III.A. Under any scenario, Plaintiffs' delay was far more than six years, and therefore, a presumption of laches applies as a matter of law.

This presumption shifts the burden to Plaintiffs to come forward with evidence (not just argument) sufficient to raise a genuine factual issue as to the reasonableness of its delay or the prejudice to Vetmedica. *Aukerman*, 960 F.2d at 1037–39. Plaintiffs have not come forward with *any* such evidence. Vetmedica's interrogatories requested that Plaintiffs identify any contentions why their claims were not barred by laches. (B0018). Plaintiffs never offered an explanation for

11

their delay in filing suit, nor did they address the ways in which Vetmedica has been prejudiced. (B0038–39). The University even concedes it knows no reason it waited to file suit:

[redacted]

(C0033–34 (129:16–130:5) (Suzanne Dubuque, University's 30(b)(6) witness)). Vetmedica tried to ascertain when Intervet first considered suing and why it delayed, but it asserted privilege:

[redacted]

(C0066 (75:5–12) (Dr. Jacobs, Intervet 30(b)(6) witness)). The only evidence Plaintiffs attempt to put forward is their expert's *opinion*, raised for the first time a month ago, that Vetmedica has not suffered economic prejudice because it [redacted] (A0054). First, Plaintiffs' expert addresses only economic prejudice, and ignores evidentiary prejudice to Vetmedica. Hence, even accepting his opinion would not rebut the presumption of laches. *See Wanlass*, 148 F.3d at 1340. Second, for the same reasons discussed in Vetmedica's *Daubert* motion filed today, his opinion that Vetmedica suffered no economic prejudice simply because Enterisol® was profitable misunderstands and misapplies the law of economic prejudice and therefore does not raise a genuine issue of material fact.[5] Thus, Plaintiffs offer no reason for their delay nor do they

---

[5] *See Mahmood v. Research in Motion Ltd.*, No. 11 Civ. 5345(KBF), 2012 WL 1801693, at *8 (S.D.N.Y. May 16, 2012) *aff'd*, 515 F. App'x 891 (Fed. Cir. 2013) ("[T]he fact that [a defendant]

12

raise a genuine issue of material fact regarding prejudice to Vetmedica. Because Plaintiffs have not and can not rebut the presumption of laches, the Court must infer Plaintiffs' delay was unreasonable and has prejudiced Vetmedica. *See Aukerman*, 960 F.2d at 1037; *St. Clair*, 2013 WL 3367319, at *4. The Court need go no further than the presumption.

### D. Regardless of the Presumption, Laches Applies to Bar Pre-Suit Damages.

Due to the presumption of laches, Vetmedica need not present any evidence that Plaintiffs' delay was unreasonable or that it prejudiced Vetmedica. *See Aqua Queen*, 93 F.3d at 1553–54; *Crown Packaging*, 679 F. Supp. 2d at 526. But the record firmly establishes both.

#### 1. Plaintiffs' Delay Was Unreasonable.

As discussed above, Plaintiffs knew of Vetmedica's alleged infringement over ten years ago and have not provided any reasons for failing to bring suit earlier. *See* § III.A, *supra*. Indeed, the University has conceded it has no excuse. Thus, Plaintiffs' delay was unreasonable.

#### 2. Vetmedica Has Suffered both Evidentiary and Economic Prejudice.

As described above in § III.B, Vetmedica suffered significant evidentiary prejudice due to Plaintiffs' delay. Though Vetmedica need not "identify with precision" evidence that is unavailable, *Odetics*, 919 F. Supp. at 922, it has done so. *See* § III.B, *supra*. The prejudice stemming from Dr. Joens' death cannot be overstated. *See Crown Packaging*, 679 F. Supp. 2d at 527–528. Because ████████████████████████████ (C004 (69:17–21)), he was likely the exclusive holder of information relating to several of Vetmedica's defenses. Vetmedica cannot question him about, for example, ATCC 55370, his biological deposit allegedly representing the claimed invention. The prejudice is particularly acute given

---

has made a profit on the technology does not speak to what [it] would have done differently had plaintiff brought his suit earlier."); *Coleman v. Corning Glass Works*, 619 F. Supp. 950, 954–55 (W.D.N.Y. 1985) *aff'd*, 818 F.2d 874 (Fed. Cir. 1987) ("It is not necessary that a defendant lose money on a product to be prejudiced by a patent holder's failure to institute a timely action." (quoting *Lemelson v. Carolina Enters., Inc.*, 541 F. Supp. 645, 655 (S.D.N.Y. 1982))).

13

Plaintiffs' assertion (first made in its July 30, 2013 rebuttal expert report) that ████████ ████████████████████████████████████████████ (A0030–31 at ¶ 24–28 ). *See Adv. Hydraulics*, 415 F. Supp. at 284. Vetmedica cannot question Dr. Joens about this. Also, ATCC 55370 is no longer available; numerous documents relevant to nearly all the issues in this case—some in the possession of third parties like Bayer or Dr. Stills—were lost or destroyed; many witnesses have forgotten relevant facts; and all of this occurred during the delay. *See* § III.B, *supra*.

Given the compelling evidentiary prejudice, the Court need not reach economic prejudice, but Vetmedica has suffered it as well. *See* § III.C. During Plaintiffs' decade-long delay, Vetmedica invested ████ on expanded development, manufacturing, and marketing of Enterisol® (*id.*). *See Adelberg Labs., Inc. v. Miles, Inc.*, 921 F.2d 1267, 1272 (Fed. Cir. 1990); *Crown Packaging*, 679 F. Supp. 2d at 527 (economic prejudice where defendant purchased specialized equipment and expanded manufacturing). These expenditures are tied to Plaintiffs' delay, because if they had brought suit earlier, Vetmedica would not have expended resources on these activities, or it could have transferred these activities to Europe or modified their products such that they would not infringe. (C0196 (43–44), C0205–06 (292–296)). Instead, Plaintiffs remained silent as damages escalated. *Cf. Aukerman*, 960 F.2d at 1033. Given the severe evidentiary and economic prejudice to Vetmedica, laches should bar any pre-suit damages.

## V. CONCLUSION

For the foregoing reasons, Vetmedica requests that the Court grant summary judgment of laches, and preclude Plaintiffs from recovering any pre-filing damages.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

| | |
|---|---|
| OF COUNSEL:<br><br>Mark A. Pals, P.C.<br>Bryan S. Hales, P.C.<br>Amanda Hollis<br>Hari Santhanam<br>Vishesh Narayen<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Tel: (312) 862-2011<br><br>Dated: August 30, 2013<br>Public Version Dated: September 13, 2013<br>1122598 / 37150 | By: /s/ David E. Moore<br>Richard L. Horwitz (#2246)<br>David E. Moore (#3983)<br>Bindu A. Palapura (#5370)<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>Tel: (302) 984-6000<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com<br><br>*Attorneys for Defendant/Counterclaim Plaintiff Boehringer Ingelheim Vetmedica, Inc.* |

15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on September 13, 2013, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on September 13, 2013, the attached document was Electronically Mailed to the following person(s):

| | |
|---|---|
| Mary B. Graham | Raymond N. Nimrod |
| Stephen J. Kraftschik | Gregory D. Bonifield |
| Derek J. Fahnestock | Aaron S. Kaufman |
| Morris, Nichols, Arsht & Tunnell LLP | Quinn Emanuel Urquhart & Sullivan, LLP |
| 1201 North Market Street | 51 Madison Avenue, 22nd Floor |
| Wilmington, DE 19899-1347 | New York, NY 10010 |
| mgraham@mnat.com | raynimrod@quinnemanuel.com |
| mbgeservice@mnat.com | gregbonifield@quinnemanuel.com |
| skraftschik@mnat.com | aaronkaufman@quinnemanuel.com |
| dfahnestock@MNAT.com | Intervet_UAZ@QuinnEmanuel.com |

By: /s/ David E. Moore
Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

1021568/37150